# American Bank, Appellant, *v.* Felder.

*Evidence—Credibility of witness—Docket entries in criminal case—Verdict without judgment.*

1. On the trial of a civil suit the plaintiff will not be permitted in rebuttal to offer in evidence the transcript of the docket entries in a criminal case to impeach the credit of a witness who had testified for the defendant, where the offer does not embrace the indictment, and the docket entries show that while there was a verdict of guilty, no judgment had been entered thereon.

*Evidence—Cross-examination—Rebuttal—Testimony on former trial.*

2. Where upon the trial of a civil suit the defendant on cross-examination is interrogated as to his having given certain testimony on a former trial, the plaintiff may in rebuttal offer parts of such testimony as to which the defendant had been interrogated specifically on cross-examination. An offer of the whole of the testimony is not necessary.

*Promissory notes—Protest—Mailing notice—Evidence.*

3. In an action against the indorser of promissory notes where the defendant denies receiving notice of protest, and his testimony is to some extent corroborated by a clerk who opened his mail, and the maker of the notes testified that the notices to the defendant came in an envelope addressed to himself, and that he had not notified the defendant that he had received them, it is not error for the court to refuse a point as follows: "Even though the notaries did not expressly say that the notices of dishonor or nonpayment sent to the defendant were addressed by them to the place where he resided, or had his place of business, the legal presumption is that the notaries did all that the law required of them as an officer or agent."

*Appeals—Assignments of error—Improper assignment.*

4. An assignment of error in the following form is improper: "No evidence was offered upon the trial of this case upon which a verdict for the defendant can be sustained."

Argued Oct. 23, 1914.    Appeal, No. 188, Oct. T., 1914, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1913, No. 1,184, on verdict for defendant in case of The American Bank v. Bernard Felder. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.    Reversed.

Assumpsit against the indorser of promissory notes.

At the trial it appeared that the notes in suit were made by Bernard Stern. Stern testified on behalf of the defendant. The plaintiff then made the following offer:

Mr. Jones: I offer in evidence the transcript of the record of the court of quarter sessions of the county of Montgomery, showing that Bernard Stern was convicted of perjury in that court on December 23, 1913.

Mr. Ashbridge: I object to this, and ask that the offer be made at side bar.

Mr. Jones (at side bar): I offer in evidence this record of the court of quarter sessions of Montgomery county.

Mr. Ashbridge: I object to the offer, because it is not the record at all; it purports only in itself to be a copy of the docket entries, and no part of the record itself is exemplified or produced.

Mr. Jones: I offer it for the purpose of attacking the credibility of the witness Stern in this case.

The Court: I will sustain the objection on the ground that it is not the record.

Exception to plaintiff. [1]

Mr. Jones: I offer the testimony taken at the previous trial in this case, for the purpose of contradicting Felder.

The Court: Haven't you interrogated him concerning that?

Mr. Jones: Yes; and he denied it.

Mr. Ashbridge: I object. He can put in all his testimony if he wants to.

The Court: Yes; if you want to put in his testimony, you must put all of it in. But you have already specifically interrogated the witness and asked him a question incorporating the testimony that you now want to offer, and you have upon this record his answers to your questions. Isn't that a fact?

Mr. Jones: Yes, sir.

The Court: Then it is on the record. Now, if you want to offer his testimony, you must offer all of it. I sustain the objection and give you the exception. [2]

Bernard Stern was asked this question:

Mr. Jones: "Q. You drew money out of this account for other purposes, did you not, than that for which you say the agreement was made to be applied?"

(Objected to by counsel for defendant.)

Mr. Jones: We can show he withdrew money out of the account.

Mr. Ashbridge: We have the book which the bank had produced, and also the assignment. We also find that notice has to be given before any money is drawn out of this account.

The Court: Then, as the evidence now stands, if Stern drew money out of that account and the bank permitted it, after entering into such an arrangement as has been testified to by Felder, then the bank was unreliable. Of course, that is if the defendant's story is correct.

Mr. Jones: I object to that statement of your honor's and ask for an exception.

The Court: I suppose by your question you want to show that Stern was unreliable in this matter?

Mr. Jones: Certainly.

The Court: If he was unreliable for having drawn out money from this account, when it was assigned, if it was assigned, to protect the Felder notes, then the bank was a party to it and it was as unreliable as Stern was. I am trying to find out what you are talking about. You may have an exception to my question, or to the statement, I think it was, that I made that you objected to. The objection by counsel for the defendant to your question is overruled, and I gave him an exception. [3]

Plaintiff offered this point:

2. Even though the notaries did not expressly say that the notices of dishonor or nonpayment sent to Felder were addressed by them to the place where he resided or had his place of business, the legal presumption is that the notaries did all that the law required of them as an officer or agent. *Answer:* The second point is declined. [4]

Verdict and judgment for defendant.    Plaintiff appealed. ·

*Errors assigned* were (1–3) above rulings, quoting the bill of exception; (4) answer to point as above, and (5) that no evidence was offered upon the trial of this case upon which a verdict for the defendant can be sustained.

*G. Von Phul Jones,* with him *Harry M. Miller,* for appellant.—The docket entries were admissible: Berghaus v. Alter, 5 Pa. 507; Boyd v. Com., 36 Pa. 355.

Portions of testimony of the former trial should have been admitted: Field v. Schuster, 26 Pa. Superior Ct. 82; Bull v. Towson, 4 Watts & Sergeant, 557; Travis v. Brown, 43 Pa. 9; Wilhelm v. Cornell, 3 Grant (Pa.), 178.

*A. S. Ashbridge, Jr.,* for appellee.—When an exemplification of a record is offered in evidence, it must contain the whole record, because the court cannot form a correct judgment without seeing the whole: Hampton v. Speckenagle, 9 Sergeant & Rawle, 211; Christine v. Whitehill, 16 S. & R. 98; Ingham v. Crary, 1 P. & W. 389; Edmiston v. Schwartz, 13 S. & R. 135; Ruggles v. Gailey, 2 Rawle, 231.

OPINION BY RICE, P. J., February 24, 1915:

For the purpose of impeaching the credit of Bernard Stern, a witness who had testified for the defendant, plaintiff in rebuttal offered in evidence a transcript of the docket entries of the court of quarter sessions of Montgomery county in a criminal case in which he was defendant.    These brief entries showed that he was indicted for perjury, that the petit jury rendered a verdict of guilty as to some of the counts, and not guilty as to the others, and that, after verdict, a motion for new trial and in arrest of judgment was made, which was undisposed of.    Neither the indictment, nor any other part of the record, nor any exemplification thereof, was produced,

The court rejected the offer on the ground that the docket entries did not constitute the record. Having regard to the purpose for which the transcript was offered, we are of opinion that the offer was incomplete because it did not embrace the indictment. For, while all perjuries are heinous, they are not equally heinous, and, if the jury was to consider the verdict in passing upon the credibility of the witness, they were entitled to know the specific character of the perjury that it was alleged he had committed.

We think the ruling may be sustained on a broader ground. A verdict of guilty is in common parlance a conviction, but when the law speaks of conviction as a ground for debarring a person from testifying, it means a judgment and not merely a verdict. This subject was fully and learnedly discussed by Judge SMITH in Com. v. Miller, 6 Pa. Superior Ct. 35, and by the present Chief Justice in Com. v. McDermott, 224 Pa. 363. Clearly, under these authorities, the fact the plaintiff sought to show by the docket entries would not affect the competency of the witness. This is conceded, but counsel contend that it was admissible to affect his credibility. If it was, then it logically follows, a verdict of guilty of felony or any species of the crimen falsi is admissible for the same purpose. A conviction, using the word in its legal sense, of such crime is admissible because it tends to show the defectiveness of the moral character of the witness in respect of truthfulness, which is relevant in impeachment: Wigmore on Ev., secs. 920–922. A verdict of guilty, without more, stands on a different plane. The most it establishes is that the jury believed the accused to be guilty. But until sentence is pronounced the issue is not necessarily closed; a new trial may be granted or judgment be arrested. In either event the verdict goes for naught. It may injure the witness in the estimation of the jury, just as in a less degree the mere indictment of the witness would. But as evidence that the moral character of the witness for truth is bad

it is unreliable because of its incompleteness. At common law, conviction of an infamous crime rendered the accused incompetent as a witness. This harsh rule has been abrogated by statute, except in certain instances, in most of the states of the Union; and now the conviction of such crime is used to affect the credibility of the witness. But the rule of the common law never extended so as to make a verdict the equivalent of a conviction, and we see many objections to extending the rule even for the limited purpose of impeaching a witness's credit. The court committed no error in rejecting the offer.

Upon cross-examination of defendant plaintiff's counsel interrogated him as to his having given certain testimony on a former trial, and, in rebuttal, offered certain portions of that testimony as stenographically reported. Upon defendant's objection, the court rejected the offer upon the ground that it did not embrace all the testimony defendant had given. It is now claimed, further, that, as he admitted on cross-examination that he had testified as it was offered to show he did, the plaintiff was not harmed by the rejection of the offer. We do not so interpret his cross-examination. To say the least, his answers were evasive and equivocal. The admissions he made in his former testimony were material; therefore, the plaintiff was entitled on this trial to his unequivocal admission that he made them, or to prove them. The case is within the principle of Gregg Twp. v. Jamison, 55 Pa. 468; and, as the witness was the defendant, within the principle of Brubaker v. Taylor, 76 Pa. 83, and Kreiter v. Bomberger, 82 Pa. 59. It was not necessary for plaintiff to include in its offer all the testimony defendant had given on the former trial; it was sufficient, for purposes of contradiction and impeachment, to offer the parts of it concerning which he had been interrogated specifically on cross-examination: Bull v. Towson, 4 W. & S. 557, 560; Wilhelm v. Cornell, 3 Grant, 178; Stokes v. Miller, 10 W. N. C. 241. In Wilhelm v. Cornell it was said:

"Where one party gives in evidence what a witness has previously testified to, for the purpose of contradiction, the other party may give all the witness said on the same subject-matter, but not every part of the testimony upon totally different subjects, for this would in no manner disprove the contradictory statements." A fortiori the party offering contradictory testimony is not bound to offer other parts of the testimony upon different subjects.

The point decided in Lloyd v. McGarr, 3 Pa. 474, is shown in the following excerpt from the opinion of Chief Justice GIBSON: "For evidence of notice, however, the plaintiff relied, not on the protest, but on the testimony of the notary, who swore to all that was necessary to constitute it beyond contradiction, except that he did not expressly say that the notice put into the post-office by him was addressed to the defendant in Pittsburg, where he resided. But the legal presumption is, that he did all that the law exacted of him as an officer or an agent; and it seems not to have been rebutted." Without taking up time in pointing out differences between the testimony of the notary there considered and the testimony of the notaries in this case, it may be granted, for present purposes, that there is no substantial difference. Still it does not follow that the plaintiff was entitled to an unqualified affirmance of its second point, the refusal of which is made the subject of the fourth assignment of error. Chief Justice GIBSON did not declare that the presumption was an irrebuttable one, and could not have done so. He was speaking of a case where there was no contradiction of the notary's testimony. Here, the defendant denied receiving notice, and was to some extent corroborated by a clerk who opened his mail. Moreover, Stern, the maker of the notes, testified that the notices to Felder came in an envelope addressed to him, Stern, and that he did not notify Felder he had received them. True, sec. 105 of the Negotiable Instruments Act of 1901

provides that, where notice of dishonor "is duly addressed and deposited in the post-office," the sender is deemed to have given due notice notwithstanding any miscarriage in the mails. Therefore, the controlling question in all such cases is, whether the notary performed his duty, not whether the notice was actually received. But the evidence that the notices were not received by the defendant, but were received by Stern, as above stated, is some evidence that they were not duly addressed and deposited in the mails. The plaintiff was entitled to clear instructions as to the effect of compliance with the provisions of sec. 105 above referred to. Also, if the defendant had offered no testimony the point under consideration would have been a proper one. But in view of the testimony adduced by the defendant upon the subject, the point was too broadly worded. It would naturally convey to the jurors' minds the idea, that notwithstanding the defendant's testimony still the law would presume that due notice had been given. For that reason the point was properly declined.

The remark of the court of which so much is made in the argument on the third assignment of error, seems not to us to have the meaning and effect which the learned counsel ascribe to it. It was, at most, a mere suggestion in the discussion between the judge and counsel, that in a certain view the action of the bank was not proper. But there was no instruction to the jury that it was not proper, nor did it appear that the court intended to express any opinion to the jury on the subject. The fifth assignment of error is not in accordance with our rules, and is not based on any request for binding direction. Such direction could not have been given, and, therefore, the assignment of error would have to be overruled even if the objections to which we have referred did not exist. The second assignment of error is sustained, and the others are overruled.

Judgment reversed and venire facias de novo awarded.