# Commonwealth *v.* Dorst, Appellant.

*Criminal law—Murder—Evidence—Cross-examination of prisoner as to prior criminal act—Credibility—Former convictions—Act of March 15, 1911, P. L. 20.*

1. On an indictment for murder committed in perpetration of a robbery, where the prisoner takes the stand, and alleges as a defense that he was under the influence of drugs and liquor and mentally irresponsible at the time of the killing, the Commonwealth does not violate the Act of March 15, 1911, P. L. 20, by asking him on cross-examination whether he had not committed another robbery about twenty minutes before.

2. In such case, to meet the issue raised by defendant himself, the Commonwealth was entitled to show that, a few minutes before the killing, defendant had performed an act which indicated plan, mental control and conscious purpose and which negatived the idea of irresponsibility.

3. If, in so doing, the Commonwealth was required also to disclose that defendant's lucid state was manifested in connection with another crime in which he was engaged, this disclosure in no way offended against the Act of March 15, 1911, P. L. 20.

4. Where, on an indictment for murder committed in perpetration of a robbery, defendant takes the stand in his own defense, the Commonwealth may offer in evidence for the purpose of affecting defendant's credibility, records of his former conviction of the infamous crime of robbery.

5. Such evidence does not violate the Act of March 15, 1911, P. L. 20, entitled "An act regulating in criminal trials the cross-examination of a defendant when testifying in his own behalf."

6. By its terms, the act applies only to the cross-examination of a defendant and regulates that; it has nothing to do with testimony offered by the Commonwealth against him.

7. The English cases construing an English act similar to the Act of 1911, not followed.

*Appeals—Charge—Further instructions.*

8. Where a trial judge gives adequate instructions on the evidence, if counsel desires further instructions, he should request the trial judge to give them.

Argued January 4, 1926. Appeal, No. 17, March T., 1926, by defendant, from judgment of O. & T. Allegheny Co., Feb. T., 1925, No. 72, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Mila D. Dorst. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before ROWAND, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Richard W. Martin,* for appellant.—The Act of March 15, 1911, P. L. 20, forbids the introduction in evidence of records of previous convictions for any purpose unless

defendant puts his character in issue or testifies against a codefendant.

The act is a reënactment in part of the English Criminal Evidence Act of 1898: Charnock v. Merchant, 1 Q. B. (1900) 474; Rex v. Wood, 89 L. K. B. 435.

The adoption of the act after its judicial construction carried with it an interpretation given it by the courts of England: McDonald v. Hovey, 110 U. S. 619; Interstate Commerce Com. v. R. R., 145 U. S. 263.

*Benjamin Lencher*, Assistant District Attorney, with him *Samuel H. Gardner*, District Attorney, for appellee. —The Act of March 15, 1911, P. L. 20, does not forbid the Commonwealth to cross-examine defendant on matters raised by his own testimony and does not forbid cross-examination of defendant on matters brought into the case by him, even though such cross-examination incidentally involves defendant in the commission of offenses not charged in the indictment: Goerson v. Com., 99 Pa. 388; Com. v. Major, 198 Pa. 290; Com. v. Fritch, 9 Pa. C. C. R. 164; Com. v. House, 223 Pa. 487; Com. v. Brown, 264 Pa. 85; Com. v. Lisowski, 274 Pa. 222; Com. v. Cicere, 282 Pa. 492.

The Act of March 15, 1911, P. L. 20, to the extent that it has any application at all applies only to cross-examination; neither this act nor any fundamental principle of law prohibits the introduction by way of rebuttal of records of convictions or pleas of guilty by the defendant as affecting his general credibility: Com. v. Garner, 28 Pa. Dist. R. 164; Com. v. Doe, 79 Pa. Superior Ct. 162; Com. v. Vis, 81 Pa. Superior Ct. 384; Com. v. Snyder, 22 Pa. Dist. R. 74; Com. v. Garanchoskie, 251 Pa. 247.

OPINION BY MR. JUSTICE SCHAFFER, January 28, 1926:

Appellant, under sentence to death for murder of the first degree committed in the perpetration of a robbery, brings to us for consideration two rulings of the judge

who presided at the trial, which it is argued were erroneous. Appellant also submits what is alleged to be a failure on the judge's part in his charge to call to the jury's attention a legal limitation upon certain evidence produced by the Commonwealth.

The two rulings complained of are that the trial judge held the defendant (whose defense was that if he committed the crime he was at the time mentally irresponsible) could be asked by the Commonwealth on cross-examination whether he had not committed another robbery about twenty minutes before that in which the murder took place and in the vicinity of the latter crime, and, the defendant having testified in his own behalf, that it was competent for the Commonwealth to offer in evidence, for the purpose of affecting his credibility, records of his previous convictions of robberies. Appellant's contention is that both of these rulings were in violation of the Act of March 15, 1911, P. L. 20. That act is entitled "An act *regulating* in criminal trials the *cross-examination* of a defendant, when testifying in his own behalf" and provides that a person charged with crime "shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation," unless he shall have asked questions of the prosecution's witness with a view to establish his own good reputation or has given evidence to prove that fact or shall have testified against a codefendant.

We think the argument advanced by appellant's counsel is unavailing as to both rulings. As to the first, that the defendant could be interrogated as to whether he had not committed another robbery but a short while before the one in question out of which the murder grew, it is of vital consequence in passing upon the court's position to have in mind the situation with which it was dealing,

created by appellant's defense. In his evidence in chief, defendant had attempted to deny the commission of the crime for which he was on trial (his denial amounted to nothing, however, in view of the strength and convincingness of the Commonwealth's case) but his real defense was that owing to his indulgence in drugs and liquor he was mentally irresponsible at the time. He thus put forward as the controlling issue in his cause his mental condition. The Commonwealth was entitled to meet this issue and countervail his attempted absolution of himself from responsibility by showing that, but a few moments before, he had performed an act which indicated plan, mental control and conscious purpose and which negatived the idea of irresponsibility. If in order to show his lucid state, the Commonwealth was required also to disclose that it was manifested in connection with another crime which he was engaged in, this disclosure in no way offended against the Act, of 1911. That act was passed not for the purpose of gyving the arms of the Commonwealth to prevent it from tearing away a defense erected, but was enacted to obviate the real or fancied hardship to defendants sanctioned by the decision in Com. v. Racco, 225 Pa. 113, long the practice in many of our criminal courts of asking those upon trial charged with crime, entirely irrelevantly to their defenses, whether they had not committed or been charged with or convicted of other offenses. No matter how great the solicitude may be for those criminally inclined who make war upon society, it would seem that when an accused person presents a defense which if established would work his acquittal, it would not be just to society at large to tie its hands in meeting the defense. The common defense of professional criminals is an alibi; if that had been the one set up here,—and indeed it was partly so,—could it be said with even a shadow of justification that the Commonwealth should be prevented from showing that the alibi was false because immediately before the time of the commission of the crime in

question, the accused was committing another near by? It was argued that the Commonwealth might be allowed to show his presence at the place but not his acts. Such a partial showing would be ineffective, in many instances would defeat its very purpose, and would amount to a solicitude for and a leaning toward the criminal to which the law-abiding part of society should not be required to submit. Here we are dealing with a bandit who shot down an unoffending citizen in cold blood.

When the cases under the Act of 1911 are studied, they confirm the view we are now taking. As before stated, the act was passed to meet the ruling in Com. v. Racco; so said Mr. Justice Frazer in Com. v. Garanchoski, 251 Pa. 247, the first case dealing with the statute. In Com. v. Pava, 268 Pa. 520, 523, speaking through the same member of the court, we said: "While the question as framed by the district attorney is on the border line, we are not convinced it was not, under the circumstances, proper cross-examination *tending to rebut defendant's evidence."* In Com. v. Coles, 265 Pa. 362, we quoted with approval what was said by the then Justice Mercur in Goersen v. Com., 99 Pa. 388, 398: "It [evidence of defendant's participation in another independent and distinct crime] cannot be received to impeach his general character, nor merely to prove a disposition to commit crime. Yet under some circumstances, evidence of another offense by the defendant may be given. Thus it may be to establish identity; to show that the act charged was intentional and wilful, not accidental; to prove motive; to show guilty knowledge and purpose, and to rebut any inference of mistake." In Com. v. Cicere, 282 Pa. 492, we decided that a conviction of murder would not be set aside because the district attorney asked defendant on cross-examination whether he had been arrested for bootlegging where the testimony preceding the question showed it to have been *"the result of a natural development of the facts,*

rather than an attempt to introduce evidence of the commission by defendant of another offense." In a very recent case, Com. v. Weiss et al., 284 Pa. 105, not referred to in the brief of either side, where the defendants, as here, had been convicted of a murder in the perpetration of a robbery, we sanctioned the admission of evidence of another robbery committed by them shortly after but away from the scene of the homicide "as showing that the defendants in their flight desired to secure funds so that they might leave the scene of the murder." We, therefore conclude that under the situation existing in the case at bar, the cross-examination was permissible and the act of assembly was not violated thereby.

This brings us to the second ruling complained of: That the Commonwealth was permitted, defendant having testified in his own behalf, to introduce the records of his conviction of other infamous crimes to affect his credibility; it being argued that this also was contrary to the Act of 1911. When we look at the title of the statute, we see that it does not relate to affirmative proof offered by the Commonwealth in rebuttal, but is "An act *regulating* in criminal trials the *cross-examination* of a defendant when testifying in his own behalf." By its very terms, the act applies only to the cross-examination of a defendant and regulates that; it has nothing to do with testimony offered by the Commonwealth against him. Appellant's counsel argues that, notwithstanding this and the decisions of the Superior Court (Com. v. Pezzner, 78 Pa. Superior Ct. 286; Com. v. Doe, 79 Pa. Superior Ct. 162; Com. v. Vis, 81 Pa. Superior Ct. 384) admittedly to the contrary, the reason for and spirit of the statute make such testimony inadmissible at any stage of the trial or under any circumstances save those excepted in the act itself. We cannot indulge in any such unwarranted speculation as to the legislature's intention. As is pointed out in the Superior Court cases which have been cited, prior to the act there is no question that the record of prior convic-

tions was admissible, indeed appellant's counsel so concedes. Since the act is silent as to such proof, obviously it has no effect on it.

In elaborating his argument that the records were not admissible, defendant's counsel, by an illustration which he uses, lends support to the opposite conclusion where a defendant has offered himself as a witness. In his printed brief, appellant's advocate says: "If the defendant puts his character in evidence, the prior convictions are relevant because they contradict a fact that he has put into the case." It is just as true that by offering himself as a witness, one on trial for crime puts in evidence the assertion that he is worthy of belief. To deny to the Commonwealth the right to traverse the defendant's proffer of himself in this regard by showing that he is not worthy of credit because infamous by judicial finding would be tilting the scales against the Commonwealth where they should be held even.

Appellant's counsel seeks to fortify his argument as to the inadmissibility of the prior convictions by calling attention to the fact that our act was passed subsequent to the English Criminal Evidence Act of 1898 (St. 61-2, Vict. c. 36, sec. 1) is in substantially the same language and he points to certain trials in England, wherein testimony as to prior convictions was not received, and sums up the situation there with the statement, "While a careful search has disclosed no case in which any attempt was made in England to introduce in rebuttal the records of previous conviction, a careful reading of the leading cases decided since the passage of the act indicates clearly that it is a generally recognized principle that a previous conviction cannot be introduced in any manner except in cases falling within the exception in the act" and concludes that the adoption of the act after its judicial construction carried with it an interpretation given it by the English courts, citing McDonald v. Hovey, 110 U. S. 619, and Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 145 U. S.

263.  Whether we should follow the English court's interpretation of a statute regulating criminal procedure may be doubted.  We have developed our own common law and unless it appeared that the sociological and legal evolution in England had progressed along lines similar to our own, it would not follow that we should give the same construction to a statute which was adopted there even though similar in language.  Our own historical development on the phase of the law with which we are dealing is shown in the able and scholarly opinion of Judge HENDERSON of the Superior Court in Com. v. Doe, 79 Pa. Superior Ct. 162; we could well adopt his language and conclusions as our own.  Our determination is that the records of defendant's prior convictions of infamous crimes were properly received for the purpose of affecting his credibility.

Appellant's last complant is that the trial judge in charging the jury did not say to them that the evidence of prior convictions was received solely for the purpose of affecting defendant's credibility and must not be considered as proof of the commission of the crime charged in the indictment.  No request was made so to instruct the jury and when we take into account that the records of convictions were offered for the limited purpose named and that the court at the time they were received said in the jury's hearing that the evidence was admitted "for the purpose of attacking the defendant's credibility and that alone" it is clear the jury was adequately informed as to the part the evidence played.  If further instructions were desired, they should have been requested.

Our examination of the record convinces us that the condemned merits the fate which the law has decreed for him.

The assignments of error are overruled, the judgment is affirmed and the record remitted to the court below for the purpose of execution.