## UNITED STATES v. KATZ.
### No. 9747.

United States Court of Appeals
Third Circuit.

Argued Jan. 3, 1949.

Decided Feb. 10, 1949.

Edwin P. Rome, of Philadelphia, Pa. (William A. Gray, Julian E. Goldberg, and Gray, Anderson, Schaffer & Rome, all of Philadelphia, Pa., on the brief), for appellant.

Joseph P. Brennan, Asst. U. S. Atty., of Scranton, Pa. (Arthur A. Maguire, U. S. Atty., of Scranton, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN, and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted of unlawfully acquiring, possessing and using counterfeit sugar ration stamps and ration checks

in violation of Sections 2.5 and 2.6 of General Ration Order 8(8 F.R. 3783), a regulation issued by the Office of Price Administration under the Second War Powers Act of March 1942, 56 Stat. 177, 50 U.S.C.A. Appendix, § 631 et seq.

Appellant's appendix is contrary to Rule 24 of this court. Appellant did not furnish appellee with a statement of the parts of the record he proposed to print, as required, nor did he print in the appendix the testimony on which he relies for several of the points urged by him on this appeal. Appellee has moved to dismiss the appeal on these grounds. In the interest of justice we have considered this appeal on its merits and deny the motion, but such a course is not in any way to be construed as sanctioning this palpable violation of our appendix rule.

The main ground urged for reversal is that appellant was not given a fair trial because of the attitude of the District Judge towards one of his attorneys.

On at least one occasion during the trial proceedings and prior to the first incident complained of, the attorney's conduct had been open to criticism. That happened when he said something which was inaudible to the reporter while a prospective juror was being examined on his voir dire. Shortly thereafter the attorney was cross examining the government's first witness as to the latter's having seen the defendant. The witness stated he had seen Katz in Harrisburg. Counsel then asked, "That was at the trial where he was acquitted?" The Court thereupon excused the jury panel and at side bar admonished the attorney for unwarrantably injecting into the case the fact that Katz had been charged with some other crime. The Court said in part, " * * * why is it you are the only member of the bar who does not follow the rules. You know you have committed an impropriety. You know you have no right to do it. * * * Why do you violate the rules of the law? * * * The witness said nothing about being in court. You must be Peck's Bad Boy, all the time violating the rules. You violated the rules right there and you are doing it persistently."

Appellant primarily complains that though this was said out of the presence of the jury, the Scranton newspapers carried the story that afternoon and the next morning. Only one of the twelve jurors chosen in the case lived in Lackawanna County wherein the papers circulate and on the resultant motion for a mistrial it was not claimed that any of them had read the articles. We do not see that this episode evinces any partiality or prejudice on the part of the Court. From the form and wording of this experienced attorney's questions he had deliberately brought before the jury the then quite irrelevant element of another criminal trial at which Katz had been acquitted. His purpose in so doing need not be speculated upon, but what he did went to the vital question of a fair and orderly trial. The Court, having the high responsibility of seeing to it that such result was obtained, of necessity was forced to call counsel's attention to his impropriety and to caution him concerning it. The record shows that the Court did this firmly, courteously and circumspectly in the absence of the jury. The comparison to Peck's Bad Boy was an apt, withal mild, offhand illustration of counsel's conduct and should have helped him realize his errors. That likeable youngster of the old cartoon, it will be remembered, had a propensity for getting himself involved through innocent mischief. Even assuming that knowledge of the newspaper articles permeated to the jury, no real harm resulted to the defendant. Griffin v. United States, 3 Cir., 295 F. 437 and Meyer v. Cadwalader, C.C.Pa., 49 F. 32, are clearly distinguishable on their facts and do not here apply.

The second major item of alleged unfairness took place during the attorney's cross examination of the government witness, William Recupero. The witness was being confronted with his testimony given at the other trial where Katz had been a defendant and which was contradictory to his testimony in the present issue. He admitted contradictions but said that Katz had told him to so testify in the Harrisburg case and that Katz had said, " * * * if I didn't do it my life was going to be in danger." Then addressing the attorney he said, "And furthermore, you know all about

the dealings; the answers in those questions you knew before we went to Harrisburg." The attorney pursued this further and the witness gave details of a meeting between himself, the attorney and Katz. Later in his testimony the witness said to the attorney, " * * * and another thing, last night while I was at the County Jail at 6:30 you came in and contacted a party in the County Jail." Counsel did not move to strike this but pressed the witness regarding it, and he elicited from the witness that the attorney had seen a client in the jail and that the latter had talked with him and told him what his lawyer had said. At that point the Court interrupted the cross examination saying, "Let's have an offer. Mr. Katz is entitled to have a fair trial, counsel or no counsel." A conference at side bar followed where the attorney advised the Court that he had gone to the jail the night previous in response to a letter from a client of his, one D'Angelico. The witness Recupero was called to side bar. The jury was excused. Recupero said that D'Angelico told him that the lawyer had offered to put $2,000 in his hands to give to Recupero together with a promise to pay his wife $30 a month while he was in jail if Recupero would change his testimony. Recupero said he rejected this offer. Following this the jury was returned and the noon recess taken with the Court saying, "Mr. Recupero will go now. I want him protected." When the court reconvened there was a further side bar conference at which counsel asked for a mistrial because of Recupero's testimony before the jury about the attorney having been at the jail the night before. The motion was denied. When the jury was recalled the Court advised it that he was not going to permit the witness Recupero for the time being to proceed "with regard to some instance last evening", which line of testimony would not be pursued unless the Court so directed. The Court further told the jury that the record as far as possible would be restricted to the indictments they were trying. Cross examination finished shortly thereafter and Recupero left the stand.

It is contended that what the Court said, first, when he stopped the cross examination of Recupero, secondly, when he permitted Recupero to leave the stand at the noon recess, and thirdly, when he spoke to the jury after the side bar conferences had been concluded and the trial resumed, all forcefully demonstrated to the jury the Judge's impatience, anger, suspicion and contemptuous disapproval of the defendant's attorney and showed that the defendant was therefore denied a fair and impartial trial. We disagree.

At the time the Court intervened, the cross examination of Recupero had developed into a bitter personal wrangle between the attorney and the witness over the circumstances of the former's jail visit with more serious and perhaps hearsay statements in the offing. The Court, quite understandably wishing to be advised as to how the attorney considered the testimony proper in the case against Katz then being tried, asked the attorney to make an offer, and, presumably having in mind the dangerous trend of the evidence and that up to that point it was primarily concerned with the attorney and not the defendant, commented, "Mr. Katz is entitled to have a fair trial, counsel or no counsel." We do not see that this was essentially harmful in the situation. Recupero's testimony about the attorney's visit to the jail may not have helped the defense, but it was the attorney himself who brought out the details of this until the Court interposed on behalf of the defendant.

It is argued that the Court in directing protection for Recupero indicated that he was actually in some danger from the attorney. This loses sight of the obvious reason for the Court's action, which was that Recupero had testified under the defense cross examination that his life had been threatened at the other trial unless he changed his story, exonerated Katz, and put the blame on one Berger. Nor does it seem that there was error involved in what the Court told the jury when it returned in the afternoon and the trial was resumed. At the time the jury had been excused, Recupero and defense counsel were heavily engaged concerning the attorney's visit to the jail. The Court had decided that temporarily at least that matter was not to be developed further. Some explanation was

called for in fairness to all concerned, including the jury, and so the Court advised the latter body that for the time being that line would not be pursued unless the Court should so direct and that the record would be restricted as far as possible to the case on trial. We think the Court handled this difficult problem discreetly and with due regard for the rights of the defendant.

The other incidents included under this grouping are minor and need not be gone into at length. Our own examination of the record satisfies us that separately, or taken in conjunction with the above occurrences, they are unsubstantial. As said in Garber v. United States, 6 Cir., 145 F. 2d 966, 974, "The combativeness of the defendant's counsel perhaps led the court into too much colloquy with them, but not to the defendant's prejudice. The attitude of the trial judge was conscientious; and he committed no reversible error."

■ It is also urged that the Court erred in its charge to the jury by misstating the evidence. This principally has to do with the assertion that the Court was wrong in advising the jury that there was direct evidence from the witnesses Macri and Dalon linking Katz with Butler, who had pleaded guilty. That portion of the Court's charge is fully borne out by the record which shows that Butler and Katz came to Macri and that Butler said he wanted the sugar. Macri testified that he answered, "I don't have no sugar, I gave the check and the stamps to Walter Dalon, you go to Walter Dalon." Dalon said that Butler and Katz came to him and that Butler wanted either the ration stamps or the sugar and told him that the stamps and check belonged to Katz. The two other items presented on this point are even less consequential than those mentioned.

■ Appellant's next ground for reversal is that the introduction into evidence of the Harrisburg indictment and details of the Harrisburg trial was error. The Harrisburg trial was brought into this case by the defense cross examination of the witnesses Macri and Recupero. The details of that matter now complained of were developed by redirect examination on the ma-

terial revealed by the said cross examination. The sole purpose of the Harrisburg indictment being received in evidence was to clear up any confusion the jury might have as to whether Katz had been acquitted in Harrisburg on the same charges for which he was then being tried. Both the re-direct testimony and the indictment had been made relevant by the cross examination and they explained or rebutted " * * * the adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced * * *." United States v. Corrigan, 2 Cir., 168 F.2d 641, 645. In Vause v. United States, 2 Cir., 53 F.2d 346, 352, a similar situation arose and the Court said:

"Under these circumstances, the government had to let the matter remain as a subject somewhat veiled in mystery and let it be implied that there was something in it disadvantageous to its case or bring the facts to light. It chose the latter course, and, if it proved to be somewhat of a boomerang to the defendant, there is no help for it now, for the government was not bound to let the defendant bring out only what he pleased and be content itself with no more. Cohen v. United States, 2 Cir., 157 F. 651."

See also Wigmore on Evidence, 3rd Ed., Section 2094, et seq.

■ Appellant then argues that the defense was prohibited from cross examining the witness, William Recupero, to impeach his credibility. The point is not included in the Statement of Questions nor is any reason given for its absence. We have nevertheless examined it and find it without merit. There was an offer of a proposed line of questions on cross examination. The defense was asked to submit authority for these and the offer was not thereafter persevered with.

■ Finally it is contended that the verdict is against the weight of the evidence. Under the proofs the question of the appellant's innocence or guilt of the charges against him in the indictments was a problem for the jury which has been determined by that body and is not here subject to review.

The judgment of the Court below will be affirmed.