## Commonwealth *v.* McIntyre, Appellant.

Argued March 19, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harold A. Gold,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 22, 1965:

Walter Plesniak was beaten to death in the early morning hours of March 14, 1960, during the course of an apparent burglary of a McKeesport, Pennsylvania cafe where the victim was employed as a janitor. Appellant, James McIntyre, was tried by a jury on an indictment charging him with the murder and he was found guilty of that crime in the second degree. Motions for a new trial and in arrest of judgment were refused and sentence of six to twenty years imprisonment was imposed. McIntyre appeals directly to this Court.[1]

The crime was unsolved until January 1961 when appellant, then age 17, gave his commanding officer in the Marine Corps the first of five written statements implicating himself in the burglary and murder.[2] In all, appellant made three statements at Parris Island and, later, two in Allegheny County. Appellant, upon his return to Allegheny County, also performed what purported to be a re-enactment of the crime which was filmed. No other evidence of the identity of the killer, or killers, was discovered.

In addition to the burglary-murder, appellant also admitted his guilt of several burglaries which were

---

[1] At trial and on this appeal appellant was represented by counsel appointed by the court below.

[2] McIntyre lived in the McKeesport area at the time of the crime. He was then 16 years, 10 months of age. In the latter part of 1960, when appellant was 17 years old, he enlisted in the United States Marine Corps and was stationed at Parris Island, South Carolina.

committed after the murder. When he was returned from Parris Island, and after he had made the five statements already noted, McIntyre, on the advice of counsel, entered pleas of guilty to these subsequent burglary offenses. One of these additional burglaries was committed four days after the murder, two were committed four and a half months after the murder, and one was perpetrated nine months subsequent to the murder. Appellant served his sentences for these burglary convictions and was then returned to Allegheny County where, in June of 1963, he was tried for the murder of Walter Plesniak.[3]

McIntyre's five written confessions, as well as the filmed re-enactment of the commission of the burglary and homicide, were admitted into evidence over the objection of defense counsel and were submitted to the jury. Included in the material read to the jury were statements contained in appellant's fourth and fifth confessions that on a previous occasion he had broken into the cafe where the murder had occurred. Appellant McIntyre testified in his own behalf and repudiated all of his confessions.[4]

---

[3] The burglary indictments all carried later terms and numbers than the murder indictment.

[4] On the stand, McIntyre contended that he was coerced into confessing because of the threats of two McKeesport, Pennsylvania men. McIntyre recited that he had aided these men in illicit narcotics traffic over a period of time and that when a valuable shipment (some $300,000 worth of narcotics) was missing, appellant was blamed for the loss. According to appellant, because of this occurrence, the two named men threatened to harm appellant's younger brother and sister unless he confessed to this burglary and murder. Appellant testified that the men supplied him with some details of the crime and also indicated the scene of the offense had been deliberately made to appear as though a burglary had been committed when, in fact, no such offense had been perpetrated. The two men involved testified for the Commonwealth. They denied appellant's accusations and further denied even knowing him.

After McIntyre testified, the Commonwealth introduced, and the court admitted over defense objection, the record of appellant's four guilty pleas to the burglaries which were committed subsequent to the date of the murder, but which were disposed of previous to the murder trial. These records were offered and admitted for the specific purpose of impeaching the defendant's credibility as a witness.

In this Court appellant raises a number of challenges to the validity of his conviction.[5]  Framing his most significant attack in terms of due process of law and requirements of speedy trial, appellant claims an unconstitutional denial of rights resulted from the Commonwealth's use, for impeachment purposes, of the conviction records of the four burglaries *committed subsequent* to  the murder for which he was being tried. It is appellant's contention that the Commonwealth should have brought him to trial on the earlier murder offense before it proceeded to try him for the subse-

---

Appellant further testified that on the night of the murder he was at the home of a family who lived about seven miles from the scene of the crime. The trial judge charged the jury that some of appellant's witnesses substantiated, to a certain degree, this alibi.

[5] Inter alia, appellant contends that the admission into evidence of his five statements and the filmed re-enactment was error because that evidence was not consistent with the material physical facts attending the victim's death or with the Commonwealth's theory of the case. It is further argued that the confessions were also inadmissible for the reasons that the accused was not afforded a preliminary hearing prior to obtaining his confession, that he was of a young age, and that his confessions were made without the assistance of counsel.

Appellant urges that the portion of his fourth and fifth confessions containing an admission of a previous burglary of the same cafe should not have been read to the jury in any event. Moreover, appellant now complains (although no exception was taken to this portion of the charge) that the trial court erred in its charge in attempting to reconcile his confessions and re-enactment with other evidence in the case.

quent burglary charges. It is thus argued that the Commonwealth's failure to do so not only violated his right to a speedy trial, but, in addition, created a criminal record which the Commonwealth unfairly utilized to impeach his credibility and to gain a conviction.

Our review of the record satisfies us that defendant is entitled to a new trial.[6] We reach this result because of the undue prejudice created by the introduction into evidence before the jury, under the instant circumstances, of the defendant's convictions for offenses committed after the date of the homicide for which he was on trial. We do not decide the claim on constitutional grounds. It is enough that we are led to preclude the practice under our supervisory power and within our function of delineating what evidence may be fairly introduced when one is on trial for his life or liberty.

The general rule in this Commonwealth in regard to impeaching credibility by proof of prior criminal record was stated in Commonwealth v. Butler, 405 Pa. 36, 46-47, 173 A. 2d 468, 473-74, cert. denied, 368 U.S. 945, 82 S. Ct. 384 (1961): "It has been the law in Pennsylvania for decades that whenever a witness or a defendant takes the witness stand, his testimony may be impeached by showing prior convictions of felonies or misdemeanors in the nature of crimen falsi: See: Commonwealth v. Dorst, 285 Pa. 232, 132 Atl. 168 (1926); Commonwealth v. Quaranta, 295 Pa. 264, 145

[6] In view of our determination, we find it unnecessary to consider or resolve all of the issues raised on this appeal. We rest our decision upon just one ground without assessing the merits of the other claims.

Any issue pertaining to the voluntariness of the confession is, in the first instance, a question properly handled in the trial court. See Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774 (1964); Commonwealth v. Coyle, 415 Pa. 379, 405-06, 203 A. 2d 782, 795-96 (1964).

Atl. 89 (1928); Commonwealth v. Yeager, 329 Pa. 81, 196 Atl. 827 (1938); Commonwealth v. Harvie, 345 Pa. 516, 28 A. 2d 926 (1942); Commonwealth v. Kostan, 349 Pa. 560, 37 A. 2d 606 (1944). It is, and has long been, the rule in the Federal courts as well. See United States v. Katz, 173 F. 2d 116; United States v. Haynes, 173 F. 2d 223." See also Notes, "Use of Prior Crimes to Affect Credibility and Penalty in Pennsylvania," 113 U. Pa. L. Rev. 382 (1965).

The rule is in accord with that followed in most jurisdictions,[7] although it has been subjected to criticism.[8] For the most part, the criticism centers on the argument that in spite of cautionary instructions to the jury attempting to limit the use of the evidence, the jury is unable, in reality, to confine the evidence to its theoretical limits.[9] If not actually so lim-

---

[7] 3 Wigmore, Evidence §980 (3d ed. 1940); McCormick, Evidence §43 (1954); 3 Wharton's Criminal Evidence §946 (12th ed. 1955); Underhill's Criminal Evidence (4th ed. 1935); 58 Am. Jur. Witnesses §734 (1948); 98 C.J.S. Witnesses §507 (1957).

[8] See, e.g., McCormick, Evidence §43, at 94 (1954); Ladd, "Credibility Tests—Current Trends," 89 U. Pa. L. Rev. 166 (1940); Report of N. J. Supreme Court Comm. on Evidence, *Rule 21* (March 1963); Notes, "Use of Prior Crimes to Affect Credibility and Penalty in Pennsylvania," 113 U. Pa. L. Rev. 382, 414 (1965); Notes, "The Use of Prior Convictions to Impeach the Credibility of the Defendant in Pennsylvania," 66 Dick. L. Rev. 339 (1962); Notes, "Prior Criminal Convictions to Impeach Credibility in New England," 42 B.U.L. Rev. 91, 109 (1962); Comment, "Impeachment of a Witness' Credibility by Proof of a Prior Criminal Conviction," 1959 Wis. L. Rev. 312, 324.

The Uniform Rules of Evidence would prohibit use of a prior conviction in impeaching a criminal defendant's credibility unless he introduces evidence solely for the purpose of supporting his credibility. Uniform Rule of Evidence 21.

[9] Compare the same underlying problem of cautionary jury instructions in the situations which were sought to be corrected by the Pennsylvania "Split-Verdict Act" of December 1, 1959, P. L. 1621, §1, 18 P.S. §4701 (instruction that evidence of prior crimes was relevant only in fixing penalty, not in determining guilt) and

ited, subsequent jury use of the evidence may prevent the jury from impartially and rationally deciding the question of guilt only on the substantive evidence itself.

In disposing of the case before us, we need not abandon the existing general rule. We do, however, refuse to extend the rule to include within its ambit situations comparable to the one which this appeal presents.

Here the murder occurred in March of 1960 and in January of 1961 the Commonwealth was in possession of defendant's statements implicating him in the crime. The offenses which constituted the impeaching criminal record used against the defendant in his June 1963 trial were all committed after the date of the homicide. Here the indictment for murder had been returned[10] before the other indictments[11] and the Commonwealth knew, or should have known, of all pending charges at the time the burglary cases were called for trial. Had the appellant been tried first on the murder charge, the offense which occurred prior in time and of which the Commonwealth was fully aware, the conviction records introduced would not have been created nor been available to impeach the defendant's credibility.

Viewed in the realistic setting of the jury trial courtroom, it must be concluded that under the instant circumstances the disclosure to the jury of defendant's unrelated subsequent criminal offenses and the disclosure of the judicially imposed sentences for such post-homicide crimes unnecessarily created an atmosphere of unfairness and prejudice not conducive to the even

---

by *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964) (instruction that jury must disregard confession if found to be involuntary).

[10] January 19, 1961.

[11] Three of the burglary indictments were returned October 10, 1961; one was returned July 26, 1961.

and impartial evidentiary determination of defendant's guilt or innocence.

While we recognize that this prejudice may occur whenever impeaching criminal records are introduced, the use of records of prior convictions is generally permitted, in spite of the inherent possibility of prejudice, on the theory that a balance must be struck and that the jury should not be deprived of important information bearing on a material witness' credibility. But in this case the balance weighs against introduction of the evidence. Generally, the scheduling of criminal trials is a matter within the discretion of the Commonwealth. We are unwilling to allow opportunity for arranging the trial of cases so that a criminal record might be created where that record would not otherwise exist were the earlier offenses tried promptly.[12]

What we here decide is that on the particular record facts and circumstances of this case the introduction of the defendant's criminal record of crimes committed subsequent to the charge being tried was unduly prejudicial and unfair. This requires that the conviction be set aside and that a new trial be had. Especially is this so because, in this instance, the prejudice created by the introduction of the subsequent criminal record far outweighed the Commonwealth's need in the trial of the case, as an evidentiary circumstance, to impeach defendant's credibility by use of these particular records.[13]

---

[12] The question of whether records of convictions for crimes committed subsequent to that being tried are admissible for purposes of *fixing penalty* under the "split-verdict" procedure is a question quite different from the present one. See *Commonwealth v. Bell*, 417 Pa. 291, 208 A. 2d 465 (1965). In that situation different functions are being served and different objectives are involved. There is no danger that the record will be impermissibly used as a basis for adjudicating guilt.

[13] It is true that appellant did not request that he be first tried for the murder and that he was represented by counsel when he

If for some compelling reason the local trial calendar or the orderly administration of criminal justice is better served by trying a subsequent offense first, then a criminal record so created should not be admissible against a defendant in his later trial for an earlier murder.[14]

The judgment below is reversed and a new trial awarded.

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I would add to the majority opinion, with which I thoroughly agree, the following observations. It was indeed a grave violation of the defendant's constitutional rights to a fair trial to try him for lesser offenses (burglaries) prior to the trial of the major offense (murder) so that at the murder trial he could be pictured as a hardened offender, thereby distracting the jury's mind from consideration of the murder facts alone. This is what happened in the tragic Sacco-

entered pleas of guilty to the burglary charges. (When he went to trial on the murder indictment, appellant had different counsel from when he entered his plea on the burglary charges.) But neither defendant's failure to request that he be first tried for murder or the fact that counsel proceeded on the burglary accusations constituted consent to the introduction of these convictions to impeach defendant's credibility. Nor did this amount to a waiver of his right to challenge the impropriety of such procedure. Such an inference cannot be found in fact or in law and the consequences are too serious to allow for such a conclusion when a man's life or liberty hangs in the balance.

[14] In general, wise and alert criminal trial calendar control would indicate that the more serious the offense, the earlier the trial be scheduled. It would appear, as a practical matter, that when an accused is charged with murder and also charged with other unrelated and later offenses sound trial administration would suggest that the accused first be tried for the capital offense, if for no other reason that in the event of a conviction on the homicide indictment, there may be no need to proceed to trial on the lesser offenses.

Vanzetti case. Vanzetti was tried on a charge of attempted robbery and then, later, with Sacco, for murder. It is fundamental in criminal jurisprudence that a defendant, charged with murder and other offenses, is put on trial first for the murder, if, for no other reason than that, in the event of conviction, there may be no need to prosecute for the lesser offense. It is now recognized by all serious students of the Sacco-Vanzetti record that the conviction of Vanzetti on the offense of attempted robbery before the murder trial, contributed heavily toward his unjust conviction, with Sacco, on the charge of murder, and, as a result, two innocent men were put to death in one of the most incredible and shocking miscarriages of justice in the annals of the American courts.

In the case at bar, the four burglaries attributed to Edward James McIntyre, occurred *after* the murder for which he was indicted. What possible light could these burglaries shed on the question as to whether he committed the murder or not? It contradicts every concept of fair play to describe the accused, as wearing, on the day of the crime for which he is being tried, a garment which, in point of fact, he did not acquire until after the tried-for offense. When Edward James McIntyre stood before the jury charged with murder, he was wearing, for the Commonwealth forced it on him, the crime-bespattered cloak of four committed burglaries, and his judges thus adjudged him in that forbidding garment, when, as a matter of stark chronology, that cloak was not so bespattered until *after* the murder. What McIntyre did after the murder could not have any possible relation, in point of proof, to the question as to whether he committed the murder or not.

McIntyre's constitutional rights were additionally violated when the Commonwealth held him for two years before selecting a jury on the murder charge. It

is no excuse, where the Constitution is involved, to say that the defendant did not clamor for a speedy trial. The clamoring of a man behind bars must travel through many stone walls before it reaches the ears of a court, and in the travel, much of its audibility may be lost. To say that a constitutional guaranty must depend upon noises before it can be accorded respect is to make sounding brass of the Constitution and tinkling cymbals of the Bill of Rights. Whether McIntyre asked for a speedy trial or not, every prosecuting official involved in this case should have heard in his ears, like blasts of trumpets, the Speedy Trial Commandment of. the Constitution.

It is a matter of the simplest observation that a prison cell in itself shouts that the occupant wants out as soon as possible; and, when one is held on an unbailable offense, it is inevitable that the only avenue for exit is through a trial. What could McIntyre want in prison, therefore, except a speedy trial after, of course, obtaining adequate time for preparation for a defense?

No matter how one regards the passage of time, whether it be at the height of revelry, when hours fly by on the wings of minutes or in travail, when minutes drag their leaden feet like weary nights, the passage of two years can never possibly be interpreted as speedy. Thus McIntyre was denied the right guaranteed him by Article I, §8 of the Pennsylvania Constitution, as well as Amendment IV of the United States Constitution, and it matters not that the prosecuting officials, in the discharge of their other manifold duties, overlooked McIntyre in his cell. No person in government should regard a prison cell other than as a temporary habitation, and it should be the duty of state prosecuting officials to examine all cells at frequent intervals of time to make certain that no one is being denied speedy justice. The Bill of Rights on this subject is of little avail if it does not guarantee that much.