Commonwealth *v.* Palarino, Appellant.

Argued November 15, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*Vincent M. Casey,* with him *George Langfitt* and *Casey, Power & Savage,* for appellants.

*Leo J. Kelly, Jr.,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY DITHRICH, J., January 12, 1951:

Five defendants—Louis Palarino, Paul Madden, Danny Vranick, Eddie Stanks and Malcolm Epstein— were jointly indicted for the armed robbery of one Bernard Kessler. Epstein entered a plea of guilty and became the Commonwealth's chief witness. Vranick was confined in a hospital and therefore was not tried. Palarino, Madden and Stanks, appellants herein, stood trial and were found guilty. Motions for a new trial were refused. Subsequently Epstein, upon whose testi-

mony the Commonwealth had relied most strongly (although there was some corroborating evidence), recanted, asserting that he had testified falsely against the appellants. Rules were thereupon granted upon the District Attorney to show cause why a reargument should not be allowed upon the motions for new trial. The proceeding was treated as if a reargument had actually been granted, and both sides were given a full hearing. The motions were again refused.

The circumstances of Epstein's recantation are as follows. Shortly after the conviction of appellants he was admitted to bail in the sum of $7500. Approximately two months later he disappeared and could not be located. During his absence the District Attorney and counsel for appellants received similar letters substantially as follows: "Jan. 14, 1950. This is to certify that the statements below are true and I am making same without any threat or promises. Paul Madden, Eddie Stanks, Robert Stoughton and Louis Palarino are innocent of all charges I have involved them in. Signed Malcolm Epstein."

On January 31, 1950, Epstein presented himself to the District Attorney and asserted that he had been kidnapped and forced to write the letters at gun point. He agreed to submit to a truth serum test to substantiate this story. When the time for the test came, however, he insisted upon being again released on bond of $7500, and when this was refused he announced his intention to plead not guilty and to stand trial on the remaining indictments against him.

In February he went to trial on a charge of armed robbery of the Thorofare Market in Brentwood. He denied participation in that robbery and some eighteen others which he had previously admitted, including the one now under consideration in which he had implicated appellants. He recanted his previous testimony and

attempted to exonerate them, as well as himself. The jury found him guilty in the Thorofare Market case.

As to recantation, this Court has said: "We cannot interfere in this matter unless there is a plain abuse of discretion. In 16 C. J., page 1188, section 2715, the law generally upon this subject is stated that 'recanting testimony is exceedingly unreliable and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially (as in this case) is this true where the recantation involves a confession of perjury . . . .' There is no form of proof so unreliable as recanting testimony. Com. v. Brady, 76 Pa. Superior Ct. 488; Com. v. DeGeorge, 89 Pa. Superior Ct. 188; Com. v. Mellon, 81 Pa. Superior Ct. 20." *Commonwealth v. Ruff*, 92 Pa. Superior Ct. 530, 535, 536.

After a careful reading of the testimony in both this case and the Thorofare Market case we are in complete agreement with the following statement by the able and experienced trial judge: "To us it is obvious that this perverse criminal has chosen the course which he has lately pursued in order to thwart justice, get even with the authorities because he has not again been released on bond, and re-establish himself with his accomplices. The statements which he made on the witness stand in this case are reasonable and they appealed both to court and jury as representing the truth. His statements in the Thorofare Market case are unbelievable and not entitled to any credence . . . . A generally dishonest and corrupt witness spoke the truth the first time when he thought it would be to his personal advantage to do so and the testimony of his wife and some other evidence corroborated him at various points. If his statements had not been true, an unbelievable series of coincidences must have taken place. A reading of his testimony in the Thorofare Market

case will, we think, satisfy any fairminded person that it is palpably false."

A further argument is made on behalf of appellants Palarino and Madden with reference to the admission into evidence of certain records of criminal offenses for the purpose of impeaching their credibility as witnesses. All of the offenses were felonies, and the records would therefore be admissible for this purpose, but it is argued that since in each case sentence was suspended and the defendant released on probation, there was no *judgment of conviction.*

The word "conviction" has both a popular and a technical meaning. As commonly understood, it means a verdict of guilty, or perhaps a plea of guilty, and for some purposes this is the meaning attributed to it by the courts. See *Wright v. Donaldson,* 158 Pa. 88, 27 A. 867; *Wilmoth v. Hensel,* 151 Pa. 200, 25 A. 86; *York County v. Dalhousen,* 45 Pa. 372. For other purposes it has been held to imply "judgment" or "sentence" upon the verdict or plea. See *Commonwealth ex rel. McClenachan v. Reading,* 336 Pa. 165, 6 A. 2d 776; *Commonwealth v. Minnich,* 250 Pa. 363, 95 A. 565; *Commonwealth v. McDermott (No. 2),* 224 Pa. 363, 73 A. 427; *Smith v. Commonwealth,* 14 S. & R. 69; *Commonwealth ex rel. Arnold v. Ashe,* 156 Pa. Superior Ct. 451, 40 A. 2d 875; *Commonwealth v. Lewandowski,* 74 Pa. Superior Ct. 512; *Commonwealth v. Miller,* 6 Pa. Superior Ct. 35.

With respect to impeachment of witnesses by records of previous convictions, it has been decided that "conviction" must be given its strict technical meaning. Neither a verdict nor a plea will, without more, suffice. *Commonwealth v. Auerbach (No. 1),* 71 Pa. Superior Ct. 54 (plea); *American Bank v. Felder,* 59 Pa. Superior Ct. 166 (verdict). There must be a *judgment* of conviction.

A probation order is not a sentence. *Commonwealth v. Fox,* 69 Pa. Superior Ct. 456. But it is a judgment. Appellants argue that it is not, on the theory that there can be no judgment without a sentence. But this Court has already held otherwise. In *Commonwealth ex rel. Paige v. Smith,* 130 Pa. Superior Ct. 536, 543, 198 A. 812, it was said: ". . . an order placing a defendant on probation, in the circumstances authorized by the Act of 1911 (P. L. 1055), is a judgment from which the defendant may appeal if he claims that error was committed on the trial, but it is not a *sentence* from which he must appeal within forty-five days after its entry, on pain of losing his right to appeal from a sentence subsequently imposed for violation of the terms and conditions of his probation. Like many other judgments, interlocutory in character, from which an appeal is allowed, (e. g. Act of April 18, 1874, P. L. 64; Act of April 4, 1877, P. L. 53), the defendant is not *obliged* to appeal until a final judgment—which in criminal cases is the sentence—is entered." See also *Korematsu v. United States,* 319 U. S. 432, 434, where the Court said: "The 'sentence is judgment' phrase has been used by this Court in dealing with cases in which the action of the trial court did not in fact subject the defendant to any form of judicial control."

Where, after a verdict or plea of guilty, the court has subjected the defendant to "an authorized mode of mild and ambulatory punishment" (*Cooper v. United States,* 91 F. 2d 195, 199), "in a system of tutelage designed for his reformation" (*Commonwealth ex rel. Paige v. Smith,* supra, at page 543), how can it be said that the court has not pronounced judgment? We are of opinion that a probation order is a judgment of conviction, finally and conclusively adjudicating the defendant's guilt, and that such a record is admissible to impeach his credibility.

Judgments affirmed.