Commonwealth *v.* Finkelstein et al., Appellants.

Argued November 13, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Barney Phillips,* and *Albert Martin,* with them *Herbert Blumenfeld,* for appellants.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for appellee.

OPINION BY ERVIN, J., December 17, 1959:

The defendants, Isaac Morshun and Phillip Finkelstein, were tried and convicted of the charge of accessory before and after the fact to armed robbery. Finkelstein was also convicted on the charge of receiving stolen goods.

Following the dismissal of motions for a new trial and in arrest of judgment sentence was imposed. Both were sentenced to imprisonment on the first charge but sentence was suspended as to Finkelstein on the receiving of stolen goods charge. Both defendants appealed from the judgment of sentence.

Albert LaMolinare, Charles Balazs and Donald Halt hijacked and robbed a truckload of cigarettes belonging to W. J. Beitler Company on May 28, 1958 at about 9:15 a.m. at the intersection of Carson and Stanhope Streets in the City of Pittsburgh. The truck was then driven to a garage at 1202 Watson Avenue, where it was unloaded. Subsequently the cigarettes were moved to a garage next to 6307 St. Marie Street in the East Liberty section of the City of Pittsburgh. On June 3, 1958 Mrs. Elizabeth Lalle, a policewoman, ob-

served men loading the cigarettes into an Avis Rental truck at the garage on St. Marie Street. She reported this and gave the license number of the truck. As a result of this information the police officers arrested a man by the name of Lapnicky, Donald Halt and Charles Balazs and subsequently discovered 186 cartons of cigarettes at the residence of John Lapnicky near Irwin, Pennsylvania. LaMolinare was subsequently arrested in Texas and brought back to Pittsburgh. At the trial LaMolinare, Halt and Balazs, who actually committed the armed robbery and who were awaiting sentence on pleas of guilty, appeared and testified as witnesses for the Commonwealth.

The principal question is whether there was sufficient evidence to sustain a conviction of accessory before or after the fact of armed robbery as to both defendants. It is contended by the Commonwealth and substantiated by the testimony of LaMolinare, that Finkelstein and Morshun had made arrangements with him prior to the robbery concerning the disposition of the cigarettes. On the other hand, it is the contention of the defendants that they did not act as accessories either before or after the fact of armed robbery and that they had no knowledge of the commission of the robbery except that which they subsequently gained from the newspapers.

We have carefully examined the testimony and are of the opinion that there was sufficient evidence to justify the conviction of the defendants as accessories before and after the fact of armed robbery. LaMolinare testified that on the day before the robbery he met Morshun in front of Bubble's Restaurant and that he told him that he had no plan to dispose of the cigarettes and that Morshun took him to Finkelstein across the street from the restaurant, where Finkelstein operated a gas station, and then Finkelstein took them around to the garage and said "Unload them

there." It is fairly clear from an examination of this testimony that both Morshun and Finkelstein understood that the cigarettes were to be stolen and that their part of the scheme was to provide the outlet for the disposal of them. Finkelstein testified that he had formerly been in the business of selling cigarettes which had been illegally brought in from out of the state. Morshun admitted in his testimony that he had been in the numbers business for some time. LaMolinare also testified that arrangements were made by Finkelstein to meet him the next morning at the garage. He further testified that between 9:30 and 10:00, after the robbery had been committed and the truck backed into the garage, Finkelstein helped him unload the truck in the garage, as previously arranged. Both defendants, in our opinion, aided in the commission of the crime of armed robbery but were not present at the actual scene of the robbery. Their arrangement to dispose of the cigarettes was an essential element in the plan. LaMolinare also testified that both of the defendants knew the cigarettes were to be stolen and that he was to receive certain moneys after the robbery as part payment of the cigarettes turned over to the defendants. He described how both men talked together and then paid him $200.00 on account. He also testified that Morshun subsequently gave him another hundred dollars for the purpose of renting a truck and transporting the cigarettes to the Lapnicky farm near Irwin. The defendants provided the location for the storage of the hijacked goods, made arrangements to dispose of the same at a later date and assisted financially in hiring a truck to transport the stolen cigarettes to another place of hiding. In our opinion these facts definitely establish that the defendants assisted the felons both before and after the commission of the crime of robbery. An accessory before the fact is one who plans, cooperates, assists, aids,

counsels or abets in the perpetration of a felony, but who is absent when the crime is committed: *Com. v. Darnell,* 179 Pa. Superior Ct. 461, 116 A. 2d 310. See also *Com. v. Mourar (No. 1),* 167 Pa. Superior Ct. 276, 74 A. 2d 732. An accessory after the fact is one who, knowing a felony to have been committed by another, receives, relieves, comforts, or assists the felon, or in any manner aids him to escape arrest or punishment: *Com. v. Darnell,* supra.

It is also contended that the court erred in refusing to admit evidence of prior convictions for felonies as to the Commonwealth's witness, Albert LaMolinare. Defense counsel cross-examined LaMolinare as follows: "Q. At that time you also pleaded guilty to other charges of burglary, did you not? A. Yes. Q. How many other charges did you plead guilty to? A. Three. Q. Three burglary charges? A. Yes. Q. And I believe all pleas were made in front of the same Court, is that right? A. Yes. Q. And you haven't been sentenced on any charges? A. Not as yet. Q. And I believe at least one of the burglaries involved breaking into a private dwelling house, is that correct? A. Yes. Mr. Fagan: I don't know the materiality of that, if the Court please. Mr. Phillips: I believe it goes to his credibility. The Court: This is cross-examination. Confine it to this case here. Confine it to the limits of the direct examination. You know the Rules of Court. Mr. Phillips: Am I permitted to ask him of any other charges he pleaded guilty to? The Court: You are a lawyer and you know the Rules. I am sustaining his objection. (Exception noted.)" Although it is proper to cross-examine concerning specific convictions of crimes affecting the credibility of the witness, the crimes must be those for which a sentence has been imposed. In *Com. v. Parlarino,* 168 Pa. Superior Ct. 152, 156, 77 A. 2d 665, it was said: "With respect to impeachment of witnesses by records of previous convictions, it has

been decided that 'conviction' must be given its strict technical meaning. Neither a verdict nor a plea will, without more, suffice. Commonwealth v. Auerbach (No. 1), 71 Pa. Superior Ct. 54 (plea) ; American Bank v. Felder, 59 Pa. Superior Ct. 166 (verdict). There must be a *judgment* of conviction." See also *Com. v. Socci*, 177 Pa. Superior Ct. 426, 428, 429, 110 A. 2d 862. The action of the court below was entirely proper in refusing to permit defense counsel to ask the witness whether he had plead guilty to any crimes. It would have been proper for him to ask in cross-examination whether he had been sentenced for any felonies or misdemeanors crimen falsi. This he did not do. It would also have been proper for defense counsel to make a specific offer of proof to show conviction and sentence for other crimes affecting the witness' credibility. This was not done. It is not error to limit cross-examination in relation to crimes affecting credibility where there has been no formal offer of proof: *Com. v. Kent*, 160 Pa. Superior Ct. 1, 2, 49 A. 2d 868. The court's action was not prejudicial to the appellant as the jury was already apprised of the fact that the witness had plead guilty to at least three burglary charges, some of which were not connected with the present case.

The appellants have also raised three other questions which were not raised in the court below. For this reason alone we would be justified in refusing to review them: *Com. ex rel. DeSimone v. Maroney*, 179 Pa. Superior Ct. 300, 303, 116 A. 2d 747. We will, however, refer to them briefly.

Appellant argues that it was error for the court below to fail to charge that the defendant Finkelstein could not be convicted on the indictment of accessory after the fact to armed robbery and the indictments of receiving stolen goods. No requests for instructions were made concerning this matter. It should be noted, however, that Finkelstein was also charged with being

an accessory before the fact of armed robbery. The testimony of LaMolinare implicated Finkelstein in the preparation for the commission of the armed robbery. A general verdict was returned. The evidence would sustain a conviction of accessory before the fact of armed robbery and this is a sufficient answer to the question. If the evidence sustains any one of the counts in the indictment for which a general verdict of guilty is returned, the verdict will stand: *Com. v. Gayton,* 69 Pa. Superior Ct. 513.

Appellant also contends that the court erred in its instructions to the jury concerning the testimony of accomplices. No requests for charge were presented to the court by defense counsel concerning this or any other matter. No exceptions were taken to the charge of the court. On the contrary, counsel indicated that it was entirely satisfied with the charge. The court very carefully instructed the jury a number of times as to the duty of the jury to scrutinize the testimony of an accomplice with care. It told them on at least five occasions that it should receive this testimony with caution. The charge was entirely correct and was in full accord with the appellate court enunciations on this subject: *Com. v. Elliott,* 292 Pa. 16, 140 A. 537. Appellant cites *Com. v. Chrostowski,* 112 Pa. Superior Ct. 466, 171 A. 901, and several other cases to the effect that the testimony of one accomplice cannot be considered to corroborate the testimony of another accomplice. In each of those cases it will be seen that the court below did make such a statement to the jury. In the present case the court below did not make any such statement to the jury. If counsel for the defense desired the court to say to the jury that it should not consider the testimony of one or more alleged accomplices to corroborate the testimony of another accomplice, it should have presented a point to the court for this purpose.

Counsel for appellant also complains because the court below said: "I am saying to you, as a matter of law, that the testimony of an accomplice should be taken with caution and you should scrutinize it. You do that with all the testimony to determine wherein lies the truth, who is telling the truth, what did happen. Did it happen as the Commonwealth's witnesses say it happened? Did it happen as the defendants say? You consider all those things. Who knew him and for how long? All those matters will help you in your deliberations." It certainly cannot be error for the court to charge the jury to scrutinize all testimony with caution to determine wherein lies the truth. It is error for the court to fail to caution the jury with respect to the testimony of accomplices.

Counsel for the appellant also complains as to that part of the charge where the court said: "You judge an interested witness with the same standards as you judge each and every other witness. Now, sometimes you can tell wherein lies the truth by your observance of them while on the witness stand. How did they strike you? Were they shifty?" As we read this charge it did not apply to any one certain witness. It applied to all witnesses alike and, therefore, no harm was done. In the case of *Com. v. Loomis*, 267 Pa. 438, 110 A. 257, cited by the appellant in this connection, the charge very clearly referred to just one witness.

Judgment of sentence affirmed and it is ordered that the appellants appear in the court below at such time as they may there be called and that they be by that court committed until they have complied with their sentences or any part thereof which had not been performed at the time the order of supersedeas was entered.

DISSENTING OPINION BY GUNTHER, J.:

I dissent. In my opinion, the record is devoid of any evidence necessary to convict the defendants of accessories either before or after the fact. The evidence very clearly discloses that defendants *did not* know who was to be robbed or when such robbery was to take place. On the contrary, the evidence discloses an offer on the part of the defendants to dispose of certain stolen cigarettes, which clearly makes out the charge of receiving stolen goods. There is nothing to indicate that the defendants procured, counselled or commanded anyone to commit the felony. In the Commonwealth's case the following testimony was produced: "Q. Then in regard to the cigarettes you were talking to Izzy about, was there any discussion as to where they were to come from? A. As far as the company's name, I don't know. All he knew would be they would be stolen cigarettes. Q. How did he know they would be stolen cigarettes? A. Because I told him I would have to steal them." On cross-examination, the following testimony was elicited: "Q. At that time when you said that you met him, not by prearrangement on his part but on your part, did you have in your own mind the robbing of this Beitler Company? A. No. Q. Did you have in mind at that time the robbery of any company wherein you would get some cigarettes? A. No. Q. But you had no idea in your mind of arranging a robbery of that company? A. I had no idea I could rob them at that time, no. Q. When he introduced you to Mr. Finkelstein that same day of that first meeting before the robbery, you didn't have any plan to rob the Beitler Company? A. That's right."

In *Commonwealth v. Giacobbe,* 341 Pa. 187, 19 A. 2d 71, the Supreme Court stated "that mere knowledge of the perpetration of a crime does not involve responsibility for its commission, nor does silence following such knowledge make one an accomplice or accessory after the fact." In *Commonwealth v. Guild,* 111 Pa.

Superior Ct. 349, 352, 170 A. 699, we held that mere knowledge of the crime standing alone is not sufficient to convict. Here, the evidence produced in reference to moving the stolen cigarettes and paying for them as well as for the hire of the truck are consistent with guilt of receiving stolen goods but not of being accessory either before or after the fact.

The majority holds that in attacking credibility of a witness involved in crimes of crimen falsi, such credibility can be attacked only for such crimes for which a sentence has been imposed. Where *records* of certain criminal offenses are offered for the purpose of impeaching the credibility of a witness, we have said that the records of previous "convictions" must include a *judgment of conviction*. Such holding, however, does not preclude the asking of a witness whether he has pleaded guilty to or was found guilty of a specific crime involving crimen falsi. If he admits the plea or the verdict, there seems no valid reason why this admission should not be permitted to be used in attacking credibility. It would be a travesty of justice to permit one, who has pleaded guilty to or was found guilty of crimes involving crimen falsi, to testify and then prevent such a witness from being cross-examined to bring out his questioned veracity simply because he had not been sentenced for such crimes. Credibility can have no bearing on whether a witness has been sentenced or not.

For these reasons, I find it necessary to dissent.