Commonwealth *v.* Woods, Appellant.

Argued September 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

*Thomas P. Ruane, Jr.,* Public Defender, for appellant.

*Lawrence D. McDaniel,* Assistant District Attorney, with him *Richard D. Cicchetti,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November, 26, 1973:

Appellant, Ronald Homer Woods, was tried by a jury and found guilty of the second-degree murder of his wife, Carolyn Meyers Woods, on December 11, 1971. Post-trial motions were denied and a sentence of imprisonment for ten to twenty years was imposed. This appeal followed.

Appellant alleges three trial errors which, he claims, warrant the grant of a new trial: (1) the trial court erred in admitting into evidence photographs of the victim; (2) the court erred in admitting into evidence statements and admissions of the appellant; and (3) the court improperly denied appellant's demurrer to the evidence. Since we agree that the receipt of the photographs into evidence constituted reversible error, we need not address appellant's other allegations of error.[1]

The law is well-settled in this Commonwealth that the admission of photographs of the body of the deceased in a homicide case is a matter within the discretion of the trial judge, and, unless there is an abuse of discretion, there is no reversible error. *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A. 2d 421 (1962). See also *Commonwealth v. Smalls*, 449 Pa. 15, 295 A. 2d 298 (1972); *Commonwealth v. Sullivan*, 446 Pa. 419, 286 A. 2d 898 (1971) (opinion in support of affirmance), *Commonwealth v. Chasten*, 443 Pa. 29, 275 A. 2d 305 (1971); *Commonwealth v. Wilson*, 431 Pa. 21, 244 A. 2d 734 (1968), cert. denied, 393 U. S. 1102 (1969). "[T]he proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. Powell*, 428 Pa. 275, 278-79, 241 A. 2d 119, 121 (1968).

The four objectionable photographs offered by the Commonwealth depicted the nude, extensively burned body of appellant's wife. These photographs were in the words of the trial judge "somewhat gruesome" and

---

[1] Appellant's second and third allegations of error are based on the claim that the Commonwealth failed to sufficiently prove the corpus delicti.

showed the feet and legs, the abdomen and the lower portion of the chest of appellant's wife to be completely charred, with very little tissue remaining. Even though recognizing that "[s]uch exhibits are not to be excluded merely because they are horrid or gruesome," *Commonwealth v. Snyder*, 408 Pa. 253, 257, 182 A. 2d 495, 496 (1962), we find that under the test set forth in *Powell*, supra, the trial judge abused his discretion by permitting the admission of these photographs.

The photographs in this case had no "essential evidentiary value." The only testimony in reference to the photographs was that of the police officers who were present when they were taken and who testified to the effect that the photographs represented the scene as they saw it shortly after the deceased's body was discovered. The Commonwealth's theory was that appellant had choked his wife to death; the burning of the body was therefore not a necessary part of the Commonwealth's case.[2] Nor were the photographs used in this case for purposes of identifying the victim.

The facts of the present case are in some elements strikingly similar to those involved in *Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A. 2d 70 (1973).[3] In

[2] The Commonwealth's own witness, Dr. Ayres, testified that death occurred prior to the burning of the body.

[3] In *Biebighauser*, the pathologist who examined the body of the victim testified for the Commonwealth that death resulted from asphyxia due to strangulation caused by pressure being applied around the deceased's neck from cloth or a fine rope or wire. He further opined that multiple stab wounds on the chest of the deceased had been inflicted after death, since there was no hemorrhaging into these wounds. In the present case the pathologist who testified for the Commonwealth stated that death resulted from asphyxia due to strangulation but he was unable to say that the strangulation came from outside sources. This pathologist also further stated that the deceased was dead at the time the body was burned as indicated by the lack of smoke particles and burned tissue in the area of the windpipe and the voice box.

that case, however, the photographs received did show evidence of strangulation and were therefore marginally relevant to the corpus delicti. Nevertheless, the Court in *Biebighauser* had "serious doubt as to the correctness of the trial judge's determination of the character of the pictures as an essential evidentiary adjunct of the medical testimony. . . ." 450 Pa. at 348, 300 A. 2d at 76. The Court held, however, that in that case a new trial was not mandated since: "two factors combine[d] to satisfy us that any prejudice which resulted was not sufficient to compel a new trial. First, the two photographs were shown to the jury for at most a total of three or four minutes out of a total trial time of 6 1/2 days; they were accompanied by immediate and complete cautionary instructions [footnote omitted], and they were not sent out with the jury. Second, appellant's defense was that of insanity, not that he had not in fact killed the deceased, nor that the severity was less than first degree. . . . While inflammatory photographs may prejudice a defendant who is challenging the degree of guilt, and perhaps also his perpetration of the crime, it is possible that they may redound to the benefit of a defendant asserting insanity." 450 Pa. at 348-49, 300 A. 2d at 76-77.

In contradistinction to *Biebighauser,* the photographs here were not even marginally relevant.[4] Even

---

[4] The Commonwealth suggests that the photographs were relevant to aid the jury in understanding the difficulty the pathologist found in performing his autopsy and of the general area where the body was located. The pictures of the *body* were not necessary to show the general area and furthermore Commonwealth exhibits 1-4 showed the general area (with the body covered by a blanket). The photographs were not shown to the pathologist and, even if they had been offered for the purpose of substantiating the pathologist's inability to determine a definite cause of death, this basis alone would not be sufficient to justify admission of the photographs. In addition, as this Court observed in *Commonwealth v. Peyton,* 360 Pa. 441, 450, 62 A. 2d 37, 41 (1948): "When the facts

assuming the relevancy of these photographs, the resultant prejudice to the appellant far outweighed any probative value. One of appellant's theories of defense at trial was that his wife's death was accidental.[5] In his defense at trial, appellant did not specifically deny the act of taking to the dump and burning his wife's body.[6] These acts, though not the subject of this prosecution, did in themselves cast opprobium upon appellant, and allowing the photographs of the incinerated body to go to the jury could only have served to inflame their minds and prejudice them against him. Furthermore, the limiting factors upon which the Court based its finding of insufficient prejudice to require a new trial in *Biebighauser* were absent in the present case.[7] The trial judge abused his discretion by admit-

that these exhibits would tend to prove can be proved by testimony without the use of photographs which tend to excite the emotions of those who view them, such testimony should be used exclusively and photographs should not be admitted."

[5] This theory is not inconsistent with the findings of the pathologist who in testifying for the Commonwealth stated that food particles were found in the deceased's trachea, indicating that the deceased had vomited, and who further stated that inhalation of vomit matters into the trachea could cause asphyxiation.

[6] Appellant testified to the following sequence of events surrounding the death of his wife: his wife had gone into the bathroom and came out choking and clutching her throat. She fell in the living room and appellant thought she had fainted. Appellant then put water on his wife's head and, when she did not revive, he felt for her pulse and listened for her hearthbeat, neither of which he could detect. He panicked, started across the street to his brother's house, then returned to his own house and the next thing he remembered was awaking in his sister's car on Route 51.

[7] The photographs were admitted into evidence and circulated among the jury. The record, however, does not indicate how long the jury examined the photographs or whether they were sent out with the jury. The trial judge did not give cautionary instructions. In his defense appellant challenged his perpetration of the crime and the degree of guilt and in no way can it be said that admitting the photographs redounded to his benefit. The jury returned a ver-

ting the photographs and for this reason alone appellant is entitled to a new trial.

Judgment reversed and a new trial ordered.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.

---

dict of murder in the second degree, and we cannot say that but for the inflammatory photographs the jury might not have returned either a verdict of voluntary manslaughter or of not guilty.