Commonwealth *v.* Zapata, Appellant.

Submitted November 8, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Donald M. Moser,* for appellant.

*Edmond H. Heisler* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 24, 1974:

On April 23, 1971, appellant was convicted by a jury of aggravated assault and battery and, following the denial of post-trial motions, was sentenced to a term of imprisonment of one to three years. On appeal, the Superior Court unanimously affirmed with-

out opinion.[1] We granted allocatur and this appeal followed.

At trial, the Commonwealth produced evidence which established that around midnight on May 22, 1970, the appellant administered a severe, unprovoked beating to one Miguel Vergara.[2] In response, appellant's testimony indicated that Vergara had been the attacker and that he (appellant) had only struck Vergara four times in self-defense.

Appellant has raised a very interesting question regarding alleged ineffective assistance of counsel at trial. Specifically, he charges that counsel's conduct in revealing his client's two prior convictions for voluntary manslaughter on direct examination constitutes manifest ineffectiveness. Appellant argues that, because these convictions mentioned arose out of crimes committed *subsequent* to the instant offense and because sentence had not yet been imposed on those convictions, they were not admissible for any purpose. Consequently, it is urged that counsel had no reasonable basis for his decision to bring this evidence out on direct examination.

In order to evaluate appellant's claim of ineffective assistance of counsel, it is necessary to first examine the alternatives which were open to counsel at trial and the course chosen. If, upon such examination, we find that counsel had a "reasonable basis" for his action, we will not find ineffectiveness as a matter of law. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 603, 235 A. 2d 349, 352 (1967). Conversely, if

---

[1] *Commonwealth v. Zapata*, 229 Pa. Superior Ct. 735, 300 A. 2d 779 (1973).

[2] The Commonwealth's evidence consisted largely of the testimony of the victim and two other eyewitnesses. In addition, the severity of the beating was substantiated through the introduction of the records of the treating hospitals which evidenced various injuries to the victim's eyes, mouth and nose.

no reasonable basis is evident, we must find that appellant was denied his constitutional right to effective assistance of counsel. 427 Pa. at 611, 235 A. 2d at 356.

Even where its use is properly limited to impeaching credibility, the introduction of a defendant's criminal record possesses a potential for severe prejudicial impact on a jury. Thus, there would rarely be a time when the introduction of such evidence would produce some result favorable to the defendant. Nevertheless, there may be situations where a defense attorney is substantially certain that the prosecution will utilize a defendant's prior convictions if he decides to testify. In those situations, it may be reasonable trial strategy for the defense counsel to bring those convictions out on direct examination in order to minimize their impact, thus muting the prosecution's thunder. Before doing so, however, counsel should be convinced that such evidence is available to the prosecution, *i.e.*, that the convictions would properly be admissible to impeach the defendant's credibility. In the absence of such certainty, counsel would be acting "ineffectively" if he introduced an aspect of his client's criminal record which was, in fact, not competent evidence. Thus, our present inquiry must focus on whether counsel for the appellant justifiably believed that the record of these convictions was admissible.

Appellant's first point—that the convictions were inadmissible because they related to crimes committed subsequent to the charge being tried—cannot be accepted as an absolute principle of law. He relies principally on our decision in *Commonwealth v. McIntyre*, 417 Pa. 415, 208 A. 2d 257 (1965), wherein we held that the introduction of the defendant's convictions for crimes committed subsequent to the charge being tried was reversible error. What appellant fails to note, however, is that in *McIntyre* we *specifically* limited our holding to the "particular facts and circum-

stances of [that] case." 417 Pa. at 922, 208 A. 2d at 261. The factual posture therein involved included the trying of *less* serious but subsequently committed charges prior to the trying of the *more* serious offense, which in that case was murder. Thus, our concern in *McIntyre* was the potential danger of calendar juggling to create a record prior to trying the more serious offense. 417 Pa. at 422, 423 n. 14, 208 A. at 261 n. 14. This restricted reading of *McIntyre* is supported by the Superior Court's decision in *Commonwealth v. Conard*, 206 Pa. Superior Ct. 33, 211 A. 2d 14 (1965), cited with approval by this Court in *Commonwealth v. Richardson*, 433 Pa. 195, 201, 249 A. 2d 307, 310 (1969). In *Conard*, Judge JACOBS distinguished *McIntyre* in this manner: "This is not a capital case and there is no indication of court calendar manipulation. . . . Inasmuch as the Supreme Court, in McIntyre, did not abrogate the general rule in Pennsylvania permitting defendant's credibility to be impeached by showing prior convictions of felonies, we are of the opinion that the prior convictions admitted into evidence in this case fall under the general rule rather than the exception enunciated in the McIntyre case. *The credibility of the witness is being attacked as of the time of the trial not as of the time of the commission of the offense for which he is being tried."* 206 Pa. Superior Ct. at 39, 211 A. 2d at 17-18. (Emphasis added.) Subsequently, in *Richardson,* this Court distinguished *McIntyre* in a similar manner: "In McIntyre, we were concerned about the possibility that the Commonwealth might arrange the order of the defendant's trials for the purpose of creating a record. In this case there is no evidence that the Commonwealth was attempting to create such a record. Appellant was indicted in Philadelphia for the felonies and in Delaware County for the murder in the same month. Trial was delayed in Delaware County because appellant moved

for a change in venue. Therefore, there does not appear to be anything sinister in the fact that appellant was tried in Philadelphia on the felony charges and then tried for murder in Delaware County. We have studied the record and do not find that appellant was denied due process by the introduction of the record of his convictions in Philadelphia at his murder trial." 433 Pa. at 201, 249 A. 2d at 310. In the present case, as in *Richardson*, there is no indication of calendar manipulation to create a record. The more serious offenses were tried first, thus negating any attempt to "build up" a record. Hence, the appellant's prior convictions were not barred from admissibility under the *McIntyre* rationale and we cannot therefore characterize counsel's representation as "ineffective" on *that* basis.

Appellant, however, raises another problem with the criminal record involved here, namely that a sentence had not been imposed for the manslaughter offenses at the time they were introduced in this case. Appellant argues on the authority of *Commonwealth v. Finklestein,* 191 Pa. Superior Ct. 328, 156 A. 2d 888 (1959), that such convictions are inadmissible, even for impeachment purposes. The Commonwealth does not contest appellant's reading of *Finklestein, i.e.,* that prior convictions may be used to impeach a witness' credibility only if sentence has been imposed for those convictions. *See* 191 Pa. Superior Ct. at 333-34, 156 A. 2d at 892. It does argue, however, that *Finklestein,* although not specifically overruled, has lost much of its vitality because of our decisions in *Commonwealth v. Ross,* 434 Pa. 167, 252 A. 2d 661 (1969), and *Commonwealth v. Fowler,* 451 Pa. 505, 304 A. 2d 124 (1973).

It is nonetheless our view that the rule of *Finkelstein* must apply without exception to situations where the witness whose credibility is under attack is the

criminal defendant in that particular trial. Nothing in *Ross* or *Fowler* suggests otherwise.

The Commonwealth cites *Ross* for the proposition that a witness under indictment for an offense which is identical or closely-related to the offense for which the accused is on trial may not be cross-examined regarding such indictment. Even if this citation did accurately reflect the holding of that case (which it does not), it is clearly inapposite to the present situation where the witness in question is the defendant himself. The rationale for permitting the interrogation of a witness regarding his indictment under such a rule is to facilitate the exposure of his potential interest in the immediate matter. Such rationale is inoperative in the present situation where the witness is the defendant himself.[3]

The alleged relevance of the *Fowler* case to the instant matter is even more perplexing. *Fowler* dealt with "the rights of an individual convicted of first degree murder and facing a mandatory sentence of life imprisonment to bail pending the disposition of post-trial motions." 451 Pa. at 507-08, 304 A. 2d at 125. Any analogy between that situation and the present case is very strained.

The potential hardship incurred by a convicted murderer in not receiving bail between the time of the jury's verdict and the disposition of post-trial motions is slight compared to the potential prejudice to a defendant in permitting the introduction into evidence of previous but non-final convictions. President Judge RICE in *American Bank v. Felder*, 59 Pa. Superior Ct. 166 (1915), noted this potential for prejudice in the use of guilty verdicts as impeachment evidence: "A

---

[3] Of course, the defendant also has a real interest in the outcome of the trial. However, such interest is obvious to everyone concerned and does not therefore require special emphasis.

conviction, using the word in its legal sense, of such crime is admissible because it tends to show the defectiveness of the moral character of the witness in respect of truthfulness, which is relevant in impeachment. . . . A verdict of guilty, without more, stands on a different plane. The most it establishes is that the jury believed the accused to be guilty. But until sentence is pronounced the issue is not necessarily closed; a new trial may be granted or judgment be arrested. In either event the verdict goes for naught. It may injure the witness in the estimation of the jury, just as in a less degree the mere indictment of the witness would. But as evidence that the moral character of the witness for truth is bad it is unreliable because of its incompleteness." 59 Pa. Superior Ct. at 170-71. We conclude that the prior "convictions" which defense counsel introduced at appellant's trial were not competent evidence. Moreover, since we cannot perceive any reasonable basis for his believing them to be admissible, we also conclude that counsel was "ineffective".

The Commonwealth asserts that defense counsel probably acted reasonably on the basis of what his client told him. Even if it were established, however, that appellant had told his counsel that sentence had been imposed in the manslaughter cases, this would not have justified bringing out the convictions on direct examination without first verifying their finality, either by checking with appellant's counsel at the earlier trial or by checking the court records. Thus, counsel's action at trial can most easily be explained by a lack of preparation. Such "explanation" does not constitute a "reasonable basis". *See Commonwealth ex rel. Washington v. Maroney,* 427 Pa. at 610-11, 235 A. 2d at 356.

Appellant's case rested squarely on the strength of his own testimony. Accordingly, his counsel's action

in bringing out the incompetent impeachment evidence was clearly prejudicial. As we have already concluded that this action constituted ineffectiveness, appellant is entitled to a new trial.

Judgment reversed and a new trial granted.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.