386 A.2d 956

**COMMONWEALTH of Pennsylvania**

v.

**Sebastian Thomas YOST, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1977.

Decided April 28, 1978.

328

Anthony D. Miele, Williamsport, for appellant.

Samuel C. Ranck, Dist. Atty., R. Michael Kaar, Asst. Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Sebastian Yost, of Shamokin, was convicted in the Court of Common Pleas of Northumberland County, in a case arising from the deaths of three Shamokin girls, Margaret Long, 16, her sister, Sharon, 15, and Carol Taylor, also 15.

Yost was convicted of murder of the first degree in the death of Sharon Long, murder of the second degree in each of the other two deaths, and criminal conspiracy. He was sentenced to imprisonment for life for murder of the first degree, ten-to-twenty years on each count of murder of the second degree, and five-to-ten years for conspiracy. All sentences were to run consecutively. He appeals the judgments of sentence.

The facts surrounding this appeal are as follows. The three girls disappeared the evening of July 19, 1973. On October 6, 1974, their bodies were discovered in a wooded area near Shamokin. They were identified on the basis of personal effects at the scene, an examination by Dr. Halbert

Fillinger, a forensic pathologist, and the identification of an orthodontic appliance belonging to Sharon Long.

The police were led to the bodies by Robert Reichwein, who reported that Yost had shown them to him and Albert Patti, Jr., after telling them that he (Yost), Ronald Scandle and Joseph Ziemba killed the girls. Both Reichwein and Patti testified at trial that Yost made the admission and took them to the scene.

Testifying against Yost after a guilty plea, Joseph Ziemba gave the following account of the events relating to the disappearance and death of each of the victims. He (Ziemba), Yost and Scandle picked up the victims on the night of their disappearance while riding around Shamokin in Scandle's car. They took them to a spot near the site where the bodies were found. When they had been there for a time, an argument broke out, which led to violence. The girls were killed at Yost's suggestion. Yost himself strangled Sharon Long. The bodies were taken to the spot where they were found, which was in a wooded ravine, and left there. The following day, a deodorizing solution was purchased at a hardware store and applied to the bodies, which were then covered with debris.

Sharon Johns, an acquaintance of all of the involved parties, testified that she was with the victims on the night of their disappearance, that they were picked up as stated by Ziemba, and that she declined an invitation to accompany them. Robert Jones, proprietor of the hardware store, identified Scandle and Ziemba as purchasers of the deodorizing solution.

Yost testified that he was with certain members of his family on the night of the victims' disappearance. Other members of the family testified that Yost was with them. Yost testified in detail about his activities on that day. He explained his ability to remember what happened by stating that it was the day his infant daughter was released after being hospitalized. His testimony concerning his daughter's hospitalization and release was corroborated from hospital records. Yost admitted knowledge of details of the manner·

of the victims' deaths. He claimed that he learned what he knew from Ziemba and from rumors that were circulating around the Shamokin area.

Appellant first argues that the evidence is insufficient to sustain his convictions. We do not agree.

In *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975), this court reiterated our standard review in judging the sufficiency of the evidence:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Robson*, 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); *Commonwealth v. Boyd*, 461 Pa. 17, 24, 334 A.2d 610, 613 (1975); *Commonwealth v. Murray*, 460 Pa. 605, 608, 334 A.2d 255, 257 (1975). Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Robson*, supra; *Commonwealth v. Murray*, supra; *Commonwealth v. Smith*, 457 Pa. 638, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The fact-finder is free to believe all, part, or none of the evidence. *Commonwealth v. Robson*, supra; *Commonwealth v. Smith*, supra."

In this case, there is testimony that appellant was a party to a plan to kill the victims and hide their bodies, that he participated in the killings, and that he strangled Sharon Long. We find that the evidence will sustain the verdict. Appellant contends that the evidence is insufficient because of the conflict between the Commonwealth's evidence and his testimony.

As stated in *Rose, supra*, a "fact-finder is free to believe all, part, or none of the evidence," and credibility is also within the province of the factfinder. Given the above test, there existed sufficient evidence to sustain appellant's convictions.

■ Appellant argues that the verdict is contrary to law. He bases his argument on the premise that a verdict is illegal if it is against the express instructions of the trial judge. *Commonwealth v. Jones*, 303 Pa. 551, 154 A. 480 (1931).

Our review of the charge in the instant case reveals that the trial judge instructed the jury on all possible verdicts, including murder of the first degree, murder of the second degree, and criminal conspiracy, the crimes that appellant was found guilty of. We find no merit in appellant's allegation of error.

■ Appellant next argues that the trial judge improperly charged the jury that he had the burden of proof concerning his alibi defense. We do not agree.

The charge of the trial judge states in relevant part: " . . . the burden is on the Commonwealth to prove, beyond a reasonable doubt, . . . every ingredient (of the crime). . . . This burden never shifts. . . "

Later, referring specifically to the alibi defense, he said: "Obviously the defendant cannot be guilty unless he was at the scene. . . . [His] evidence that he was not present, either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of his guilt in your minds. If you have a reasonable doubt, . . . you must find him not guilty."

The above charge clearly established that the Commonwealth had the burden to prove beyond a reasonable doubt all elements of the crimes charged. See *Commonwealth v. Hilbert*, 476 Pa. 288, 382 A.2d 724 (1978). The trial judge in the above-quoted portion of the charge did not shift the burden to appellant to prove his alibi defense, but merely instructed the jury as to how to use the evidence appellant introduced at trial. We find no error.

■ Appellant next claims that the trial court erred in refusing to allow him to call several witnesses. Appellant proposed to have these witnesses testify that unnamed per-

sons had told them these unnamed persons had knowledge of the killings because they had taken part in the slayings. During appellant's offer of proof, he stated that he was not introducing the statements for their truth, but rather simply to show that the statements were made. The trial court refused appellant's offer on grounds of either relevance or a violation of the hearsay rule.[1]

During his offer of proof, appellant did not show how the mere fact that these statements were made tended to prove either his guilt or innocence. Because of this, the statements did not meet the test of relevancy. The only way which the statements could have been relevant was to show someone's admission of complicity in the slaying. In that case, however, the statements would have been offered to prove the truth of the matter asserted and thus been inadmissible hearsay. In any case, the trial court did not err in refusing to allow the testimony.

Certain questions that the defense desired to ask appellant were also excluded on the basis of hearsay. Counsel proposed to ask appellant whether Ziemba told him details of the alleged crime and made threats against him. Appellant again argues that he was offering to prove only that statements were made. We reject this contention because the purpose in this instance, as well, was to put the blame on someone other than appellant, thus making it inadmissible hearsay.

While cross-examining Joseph Ziemba, appellant was not permitted to question him on the details of a previous incident in which Ziemba was convicted of corrupting the morals of a minor and deviate sexual intercourse. Appellant contends that he should have been permitted to pursue such questioning to impeach Ziemba's credibility. A *witness* may be impeached on the basis of past convictions, but only if the convictions involve crimes of dishonesty or

1. At trial, the court refused to allow the testimony on grounds of relevancy. In the opinion filed which supported the denial of post-verdict motions, the court held that the testimony was inadmissible hearsay.

false statements. *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973). Sex crimes may not be used to impeach the credibility of a witness. See *McIntosh v. Pittsburgh Rwys. Co.*, 432 Pa. 123, 247 A.2d 467 (1968), where we held that a pandering conviction was not a proper basis for impeachment.

■ In cross-examining Robert Reichwein, the defense desired to question the witness as to whether appellant had any prior record of sexual offenses. It was not permitted to do so. Appellant claims that this was error. His sole contention in support of his claim is that this case falls within the ambit of *Commonwealth v. Zapata*, 455 Pa. 205, 314 A.2d 299 (1974), where we held that the defense may introduce evidence of the defendant's prior criminal record if the Commonwealth would be able to introduce such evidence against the defendant for impeachment purposes. Under *Katchmer, supra*, and *McIntosh, supra*, the Commonwealth could not introduce evidence of prior sex crimes, so *Zapata* is not applicable and the question was properly excluded.

■ Appellant claims that the trial judge erred in admitting, over his objection a black and white photograph taken at the grave site of the skeletal remains of Sharon Long. He alleges that it was gruesome and inflammatory and not of significant evidentiary value. The trial court has discretion on the admission of photographs, but it is an abuse of discretion to admit photographs that are unduly gruesome so as to inflame the passions of the jury, if the photographs do not have sufficient evidentiary value to compensate for their inflammatory potential. We so held in *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974), where we found it to have been error to admit fourteen color slides of the body of a homicide victim. The slides were bloody and explicit, and we did not find them to be of significant value in understanding the case. The Court held that the probative value must outweigh the prejudicial effect of such photographs.

A photograph of a corpse is less objectionable if it is in black and white and the body is shown in a less gruesome manner. *Commonwealth v. Petrakovich*, 459 Pa. 511, 521, 329 A.2d 844 (1974). We set forth the applicable standard in *Petrakovich* as follows:

"We have consistently held that the question of admissibility of photographs of a corpse in homicide cases is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Woods*, 454 Pa. 250, 311 A.2d 582 (1973); *Commonwealth v. Sullivan*, 446 Pa. 419, 286 A.2d 898 (1971) (opinion in support of order); *Commonwealth v. Chasten*, 443 Pa. 29, 275 A.2d 305 (1971); *Commonwealth v. Robinson*, 433 Pa. 88, 249 A.2d 536 (1969); *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968); *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959); *Commonwealth v. Peyton*, 360 Pa. 441, 62 A.2d 37 (1948). When the trial judge is confronted with gruesome or potentially inflammatory photographs, the test for determining their admissibility which he must apply is 'whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.' *Commonwealth v. Powell*, supra, 428 Pa. at 278 279, 241 A.2d at 121; *Commonwealth v. Peyton*, supra, 360 Pa. at 450, 62 A.2d at 41. A photograph which is not deemed to be inflammatory, however, may be admitted so long as it has relevance and can assist the jury's understanding of the facts of the case before it. *Commonwealth v. Claitt*, 454 Pa. 313, 311 A.2d 922 (1973); *Commonwealth v. Smalls*, 449 Pa. 15, 295 A.2d 298 (1972); *Commonwealth v. Morgan*, 448 Pa. 494, 295 A.2d 77 (1972)."

We find that the photograph in question here was properly admitted. The trial judge admitted a single black and white photograph of a skeleton at the grave site. It was not bloody, nor was it obvious from the photograph that any violence had occurred. Anyone who did not examine it carefully might not be aware at all that it depicted human

remains. The skeleton does not appear so prominently as to be readily identifiable without a close look. A human skull is discernible, however, if a close examination is made. The photograph should not be viewed as particularly inflammatory. By providing an example of how the bodies were situated at the grave site, it illustrated what happened to the victims, thereby aiding in understanding the alleged crime. We deem that sufficient to render it admissible under the circumstances of this case. See *Commonwealth v. Snyder*, 408 Pa. 253, 182 A.2d 495 (1962).

Another alleged error was the trial court's refusal to allow the question "whether or not, Albert, you have had a severe drug problem?" during the cross-examination of Albert Patti. Appellant argues that it was a proper question because it had a bearing on Patti's credibility. The purpose was to show that Patti was not mentally stable at the time that Yost allegedly admitted to him that he killed the victims. If Patti's mental condition at that time had been impaired so as to affect his ability to remember what he saw or heard, evidence as to his condition would be relevant. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974). Such impairment may be shown on the basis of use of drugs or alcohol at such time, but questions on their use at other times are impermissible. *Commonwealth v. Duffy*, 238 Pa.Super. 161, 353 A.2d 50 (1975). After the objection to the disallowed question was sustained, appellant was permitted to question Patti on his use of drugs at the particular time of the alleged admission. Patti said that at the time he was taking Proloxin, a tranquilizer prescribed for a nervous condition, and was not taking heroin, cocaine, or Tolwyn, a synthetic form of morphine. Having been allowed to ask such questions, appellant was not denied any right that he had to attempt to impeach on the basis of drug use. The disallowed question would have brought out any drug problem that Patti might have had at an irrelevant time and was, therefore, properly excluded.

Appellant alleges that he was not tried by twelve competent jurors. Appellant argues that because one juror

became ill and had to be hospitalized *after* the verdict, he was entitled to a new trial. Appellant would be entitled to a new trial only if the record showed that he had been denied the essential features of a jury trial. *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938). A juror should not be so physically infirm as to be unable to properly discharge his or her duties. *Commonwealth v. Brown*, 231 Pa.Super. 431, 332 A.2d 828 (1974). We find no denial of appellant's rights in this case. Nothing in the record indicates that the juror was ill *during* the trial or that she in any way failed or was unable to discharge her duties. Her being taken ill afterward is, therefore, irrelevant. See also *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976).

Finally, appellant claims that his trial attorneys were incompetent because they did not move for a change of venue. The record shows that they originally intended to do so. They thought there was a reasonable chance of success because Shamokin is a small town and the alleged crime was publicized in the local media after the discovery of the victims' bodies. The matter was discussed thoroughly with Yost, who agreed that the motion should be made. Counsel abandoned the idea after the denial of a motion by Roland Scandle for a change of venue in his trial. They decided they could not secure a change of venue if Scandle could not succeed in his motion. Yost was advised of this and agreed with counsel's assessment of the situation.

A decision by counsel not to take a particular action does not constitute ineffectiveness if it is based on a reasonable conclusion that there will be no benefit and is not caused by sloth or ignorance of available alternatives. *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). It was reasonable to conclude that a motion for change of venue would have been fruitless. Because of counsel's careful consideration of the matter, we find no sloth or ignorance. Counsel is presumed competent and appellant has the burden to prove otherwise. *Com. ex rel. Washington v.*

*Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).[2] Under the facts of the instant case, appellant has not carried his burden to show that counsel was incompetent.

Having considered all of appellant's allegations, we find no error.

Judgments of sentence affirmed.

POMEROY, J., files a concurring opinion.

ROBERTS, J., concurs in the result.

MANDERINO, J., files a dissenting opinion.

JONES, former C. J., took no part in the consideration or decision of this case.

POMEROY, Justice, concurring.

I concur in the decision of the Court. I am unable, however, to agree fully with the rationale of the opinion upholding the admission of the photograph taken at the gravesite and supposedly depicting skeletal remains. The picture, which I have examined, appears to me to have had but marginal relevancy; it proved little or nothing as to the conduct or state of mind of the defendant, nor, so far as I can see, did it supply or corroborate any other element of the case that the Commonwealth had to prove. But if on this account the admission of the photograph was error, I believe the error was harmless; I can see no prejudice to any interest of appellant's which would justify reversal.*

2. Scandle was convicted in Lebanon County after being granted a change of venue in a second petition after Yost's trial. The reason for granting the change of venue may have been that Yost's trial generated publicity that made a fair trial on charges from the same incident impossible in Northumberland County. In any event, the denial of Scandle's first motion made the withdrawal of Yost's motion reasonable at the time.

* The trial court gave the jury cautionary instructions about the pictures, thus reducing to a minimum any possible prejudice to the defendant. See *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747, 752–53 (1977) (Pomeroy, J., concurring). The court also excluded three other black and white photographs of the gravesite because they were cumulative.

The Court concludes that the challenged photograph was admissible as both relevant and non-prejudicial. In so doing, the majority purports to apply the test enunciated in *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974). Because in my view the language of the majority opinion is not an accurate application of our holding in that case, I feel constrained to write this separate statement.

As Mr. Justice O'Brien notes, the challenged photograph is a single black and white picture showing the area where the victim's skeletons were found; the remains themselves are barely discernible. I should think that these characteristics of the exhibit are answer enough to any assertion, such as that made by Mr. Justice Manderino in dissent, that photographs of human remains must be deemed inflammatory *per se*. The majority, however, places reliance on its appraisal that "[t]he photograph should not be viewed as particularly inflammatory." *Ante* at 337. In making this statement the majority seems to overlook the fact that the *Petrakovich* test consists of two steps, *viz.*, determining whether a photograph proffered as an exhibit is inflammatory or not, and, if it is, proceeding to determine whether it has such evidentiary value that its "need clearly outweighs the likelihood of inflaming the minds and passions of the jury." *Petrakovich*, supra, 459 Pa. at 521, 329 A.2d at 852, quoting *Commonwealth v. Powell*, 428 Pa. 275, 279, 241 A.2d 119, 121 (1968). Instead, the majority seems to be saying that a photograph's evidentiary value is to be balanced in each case against various subtle gradations of inflammatory potential. With this I cannot agree; to view the *Petrakovich* test in this manner is to adopt in part the notion that "photographs are inflammatory *per se* "—a conclusion that *Petrakovich* explicitly rejected. *See*, 459 Pa. at 522, 329 A.2d 844. *See also, Commonwealth v. Hilton*, 461 Pa. 93, 101, 334 A.2d 648, 650 (1975) (Pomeroy, J., concurring, joined by Jones, C. J., and Eagen, O'Brien, and Nix, JJ.).

In the instant case the conclusion is inescapable that the photograph which was admitted simply was not inflammatory at all; indeed, the "skeletal remains" were barely distin-

guishable as such. Thus the inquiry in passing on admissibility becomes whether the photograph "has relevance and can assist the jury's understanding of the facts of the case before it." *Petrakovich, supra,* 459 Pa. at 521, 329 A.2d at 849.

While, as stated above, I have some difficulty in finding relevance, the trial court was clearly correct in not excluding the exhibit because of any gruesome or emotionally exciting aspect. Thus I concur in this Court's upholding of the challenged ruling.

MANDERINO, Justice, dissenting.

Once again this Court is asked to review a claim that it was error for the trial court to admit an inflammatory photograph of a corpse. *See Commonwealth v. Smith,* 477 Pa. 505, 384 A.2d 1202 (1978) (Manderino, J., dissenting); *Commonwealth v. Norris,* 477 Pa. 239, 383 A.2d 912 (1978) (Manderino, J., dissenting); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977); *id.* at 489-91 (Roberts & Manderino, JJ., concurring and dissenting). Once again the majority finds no error in admitting such photographs. Although I have already expressed the view that recent decisions of this Court make it difficult to construct a case where a new trial is granted because of the admission of inflammatory photographs, *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468, 497-501 (1977) (Manderino & Roberts, JJ., concurring and dissenting), I must express my dismay and disagreement with the reasoning employed by the majority in this case.

The trial court admitted a photograph of the skeletal remains of one of the deceased. The majority is forced to conclude that the photograph is inflammatory, although it does so reluctantly, stating that the photograph is not "particularly inflammatory." Even under the test a majority of this Court adopted in *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 (1974), a standard with which I continue to disagree, the pictures are therefore inadmissible unless "*of such essential evidentiary value that their need*

*clearly outweighs the likelihood of inflaming the minds and passions of the jury."* (Emphasis added).

By no stretch of the imagination can it be said that this photograph had "essential evidentiary value." The majority holds this photograph admissible because it "[provided] an example of how the bodies were situated at the gravesite, [and] illustrated what happened to the victims, thereby aiding in understanding the alleged crime." The flimsiness of this purported relevance is self-apparent. A skeleton cannot possibly illustrate "what happened to the victims." Death was by strangulation, and I am at a loss to understand how a skeleton can illustrate strangulation. I am also at an utter loss to comprehend the relevance of "how the bodies were situated." There is absolutely no issue in this case even remotely related to the situation of the victims' bodies. Not only was this photograph lacking in "essential evidentiary value," this photograph had no relevance whatsoever. Under any test ever articulated by this Court for reviewing a trial court's discretion in admitting photographs of corpses, to admit this photograph was an abuse of that discretion. I dissent.